MARY SPENCE ET AL. V. ALEXANDER McGOWAN.

1. DISTINGUISHED—TRESPASS TO TRY TITLE.—See opinion for a discussion of the distinction between the action of ejectment at common law and the statutory action of trespass to try title.
2. TRESPASS TO TRY TITLE.—The statute permitting a second suit in trespass to try title should be strictly construed.
3. TRESPASS TO TRY TITLE—SECOND ACTION—DISPUTED BOUNDARY.—Though the location of a disputed line between adjacent surveys may be determined in an action of trespass to try title, yet, when the sole object of the suit is to determine the location of the line, and there is no question as to the title to either survey, the parties, under the former statute, would be entitled to but one adjudication on the question.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The opinion states the case.

*Walton, Green & Hill* and *W. B. Denson*, for appellants.—
Ordinarily, perhaps, the question of *res adjudicata* ought to
be submitted to the jury; but that is uniformly where the
question involves matters of fact, and never where it is only
matter of law.

Where the essentials of an estoppel *in pais* are definitely
stated under the law, the facts in this case do not constitute
estoppel, and particularly so when the law is applied, as was
done by the court.

The question on this subject in this case was purely one of
law, with which the jury had nothing to do. It arose from
the construction of articles 5293 and 5298 of Paschal's Digest,
and we think it ought to have been construed by the court.

The pleadings in the first suit are embodied in the record;
also the answer.

The two papers constitute not only a suit of trespass to try
title in substance, but also according to strictest technical and
statutory rules. (Paschal's Dig., arts. 5293, 5298, 5299, 5307;
Dangerfield *v.* Paschal, 20 Tex., 541; Allen *v.* Stephanus, 18
Tex., 669.)

The plaintiffs were entitled to their second suit. If so, then
the charge of the court, objection to which was saved in motion
for new trial, was palpably erroneous, and will necessarily work
a reversal of the case.

*Manly & Masterson*, for appellee.—Appellants, in their assign-
ment of errors, present only two questions for adjudication;
the first and second claiming that the court erred in its charge
on the plea in bar of *res adjudicata;* the others claiming that
the court erred in its charge as to the settlement of boundary.

The first question is fully settled. (Bird *v.* Montgomery, 34
Tex., 713, and authorities cited.) The other question is no
longer an open one. (McArthur *v.* Henry, 35 Tex., 801, and
authorities cited.)

BONNER, ASSOCIATE JUSTICE.—The plaintiffs below and appel-

lants here—Mary Spence, formerly the wife of Isaac Majors, now deceased, and their three children—brought this suit against Alexander McGowan, appellee, originally in the form of an action of trespass to try title, but in reality, by subsequent amendment and agreement of parties, to settle and adjust the boundary line between lot number 2, owned by Mrs. Spence and the other appellants, and lot number 3, owned by Mc-Gowan, in block number 13 in the city of Houston. There is no contest as to the title to lots numbers 2 and 3, it being admitted that they are owned by the parties respectively.

This is the second suit between these parties for this purpose, this litigation having originated in the year 1870. The present appeal has been pending since February 16, 1874. On both trials a verdict and judgment were rendered in favor of McGowan.

On the trial below McGowan pleaded the former judgment in bar of this suit, and the court instructed the jury that if the present action was to settle and adjust the same boundary line as the first, and was between the same parties, they would find for McGowan under his plea of *res adjudicata*, and would return a separate verdict to this effect.

McGowan also set up the defense that the boundary line between the two lots had, about the year 1855, been agreed upon and adjusted, with the aid of a competent surveyor, by and between himself and Isaac Majors, they being the owners of the lots, and that, in accordance therewith, he soon thereafter placed valuable improvements on his lot number 3, and up to the line as thus adjusted; that these improvements were destroyed by fire, and that subsequently, and after the death of Isaac Majors, with the acquiescence of his surviving wife, the said Mary Spence, and with the aid of a surveyor, he again had the boundary line adjusted and fixed at the same place as before, and had rebuilt valuable brick improvements for a boundary upon his lot and to within a few inches of this lin

The testimony tended to prove these allegations, and further, that this line had been respected as the true boundary

until within a short time before this litigation commenced, when it appeared from certain surveys made by the city surveyor that one line of lot 2, as claimed by Mrs. Spence *et al.*, was several feet in the street, and that if the line of this lot should be adjusted by this street, then, to give it the proper quantity of land, the corresponding line would have to be moved back, and would to this extent take part of McGowan's improvements. The testimony further tended to prove that Mrs. Spence had not been disturbed in her possession by the city authorities, and that before the suit McGowan had offered to pay her for any excess which his lot might contain over its true quantity.

Upon this issue the court instructed the jury, substantially, that the acts and agreement of Isaac Majors and the acquiescence of Mrs. Spence after his death would estop both her and their children, some of whom were minors, from asserting any other, as the true boundary, than the one agreed upon.

The instruction of the court on both issues is assigned as error, the jury having returned two separate verdicts thereon, both in favor of McGowan.

The court now, as well as formerly constituted, have had much difficulty in arriving at a satisfactory conclusion upon either of these questions, and the case was at one time referred back for further argument, but owing to the character and long continuance of this litigation we have thought it proper to dispose of it. In doing so, however, we have placed it upon as narrow ground as possible, the opinion being based upon the first question—*res adjudicata;* for if the judgment was proper upon either issue, it would be decisive in favor of McGowan.

A second suit is not given by the Revised Statutes in trespass to try title, and hence the question will soon cease to be a practical one. That it could not be permitted under the old statute when the issue was one of boundary simply, has been expressly decided by this court. (Bird *v.* Montgomery, 34 Tex., 713.)

Doubt as to the correctness of this decision has heretofore prevented the disposition of the case in this court.

In view of the legislative expression as contained in the Revised Statutes, a majority of the court do not now feel inclined—whatever doubt we might otherwise have had—to disturb a former decision of this court, directly in point, upon what may virtually be considered an abstract question.

In support of that decision, it may not, under the circumstances, be inappropriate to advert very briefly to the history of the action of ejectment at common law and its bearing, in this connection, upon our late statute of trespass to try title.

Under the old action of ejectment the plaintiff did not recover the term, but simply damages for the trespass, the measure of which was the mesne profits for use and occupation. Afterwards it was moulded into the form of a real action, by which the plaintiff could recover the term and have his writ of possession, with but nominal damages only.

Thus its original object was reversed, and it was changed from an action of trespass, with mesne profits as damages, into an action for the term itself, with but nominal damages, leaving the party to his separate action for mesne profits.

By subsequent change, originating with Lord Chief Justice Rolle, the parties plaintiff and defendant were fictitious persons; proof of lease, entry, and ouster were dispensed with, and the question of the right of possession and of title only were put in issue, and the action became, in effect, what it is at the present day—one to try title.

At common law, the judgment in ejectment was an exception to the general rule, that a verdict and judgment are conclusive between the same parties and those claiming under them, in regard to the same subject-matter, and as many new suits, either by the plaintiff or the defendant, could have been brought as the parties desired, unless restrained by a court of equity by proceeding in the nature of a bill of peace.

The exception was based upon the reason, that as the plaintiff in the suit was only a fictitious person, and as the demise,

term, &c., could be laid in many different ways, it could not, from the structure of the record, be made to appear that the second suit was brought between the same parties and upon the same title as the first. Hence, technically, an estoppel could not successfully be pleaded so long as a new fictitious plaintiff could be used.

It was, perhaps, also based upon the further reason of the peculiar regard which, under the feudal system, attached to the tenure by which real estate was held, in consequence of which our English ancestors were unwilling that one trial, as in suits for other property, should finally settle the question of title. (Adams on Eject., chaps. 1, 420; Tyler on Eject., chaps. 1, 585, 592; Cunningham v. Morris, 19 Ga., 583; Miles v. Caldwell, 2 Wall., 40.)

By our statute of trespass to try title the common-law action of ejectment was materially changed. All fictitious proceedings were abolished; only two actions were permitted to be brought, and these were confined to the plaintiff; and, by proper indorsement on the petition, the suit could be both to try title and for mesne profits as damages.

The privilege allowed by the statute to bring the second suit was, perhaps, given for the reason, that to overcome the possession which was generally held by the defendant, and who could, without special pleadings, rely for his defense upon the plea of " not guilty " only, the plaintiff, who had the burden of proof of superior title, should be allowed this second suit, to supply any defects in his own direct chain of title, or that which might become necessary in the nature of a confession and avoidance of defendant's title, and which may not have been known until developed on the first trial.

The common-law reasons having ceased with us, real estate being subject to transfer with almost the same facility as personal property, and all fictitious proceedings in ejectment being abolished, it would follow that this rule of practice allowing the second suit might, as is now the case under the Revised Statutes, have well ceased also, and that judgments in such

cases should have had the same conclusive effect as other judgments. (Wells' Res Ad. and Stare Dec., sec. 327; Miles *v.* Caldwell, 2 Wall., 35.)

It is true that the statute permitted an order of survey in the discretion of the judge presiding, or on motion of a party to the suit, and that the report of the surveyor. could, if acquiesced in by the court, have been allowed as evidence. (Paschal's Dig., art. 5294.)

This was intended to provide, in cases " wherein the right or title to any lands or tenements shall come in question," an additional mode of evidence in the nature of a judicial commission, rather, it would seem, to ascertain the extent of an actual conflict between two different surveys covering, in whole or in part, the same locality, so as to enable the court the better to decide " the truth of the matter in difference," as to the superiority of title to the same land, than simply to adjust the question as to a mere division line, there being no dispute as to title.

Although, by the practice under that statute, such division line could have been adjusted in a suit technically of trespass to try title, yet the proceeding, when this was the sole object sought, was more in the nature of one to adjust boundaries than strictly one of trespass to try title.

The provision of the statute permitting the second suit was an exception to an almost universal rule founded on the wisest public policy, and should be strictly construed and confined to those cases of trials of title proper which come within the mischief which was intended to have been obviated.

It is not perceived, when the question is merely to adjust a division line—the title being admitted to be in the parties respectively—why one adjudication should not be as conclusive upon them as in any other simple question of fact. That no special favor or privilege was intended to be given by the Legislature to this class of litigation, the speedy settlement of which by all courts is encouraged, would seem evident from the fact that, by express statute, such controversy in certain cases was

committed to the decision of a justice of the peace and six jurors. (Paschal's Dig., art. 4527 ; George v. Thomas, 16 Tex., 89 ; Wells' Res Ad. and Stare Dec., sec. 338.)

AFFIRMED.

[Opinion delivered March 9, 1880.]

[Chief Justice MOORE dissented.]