### A. B. CARLEY AND J. H. SMITH v. G. W. PARTON.

#### No. 2688.

1. **Division Line.**—See facts held insufficient to show consent to a division line run in 1855 on part of owner of the land encroached upon by the line so run.

2. **Limitation of Three Years.**—Where the chain of title under which the bene-

fit of three years limitation is sought does not include the land in dispute in its descrip-·tion, such possession does not mature the claim and possession into title.

**3. Limitation of Ten Years.**—So where there is no actual adverse ocoupancy, ·and the paper title under which possession is held does not include the land in controversy, the statute of limitation of ten years does not apply.

**4. Trespass to Try Title—Practice.**—Where the title to the land is in controversy the suit is practically *trespass to try title,* and in such suit one tenant in common as plaintiff could maintain the action against one having no title. A plea in abatement for nonjoinder of other tenants in common with plaintiffs was properly disregarded.

APPEAL from Limestone.    Tried below before Hon. Sam. R. Frost.

September 18, 1886, appellee Parton sued appellants Carley and Smith. The alleged purpose of the suit was to establish the division line between the parties, the plaintiff owning or claiming the north half of the Thomas Johnson survey and the defendants the south half.    It was alleged that in 1878 a survey running said line had been made by one S. G. McLendon at the instance of plaintiff and a former owner of the south half, which line was approved by the respective owners affected by it.    The petition ·alleged that defendants were asserting ownership north of said McLendon line, etc.; prayer for judgment establishing the line, damages, and costs.

The defendants pleaded nonjoinder of parties plaintiff (two children of plaintiff who owned two-fifths undivided interest in the north half of the Johnson survey).    This plea was disregarded.    Defendants separately answered, claiming in severalty parts of the south half, and claiming to extend about seventy varas north of the McLendon line.    They also pleaded limitation of three, five, and ten years.

April 1, 1887, the case was tried without a jury and judgment rendered for plaintiff, adopting the McLendon line as the true division line, which divides the 640-acre tract into two equal parts.    Defendants appealed. The statement of facts shows that it was agreed between the parties that the suit did not involve title, but was a suit to establish a boundary line; that the Johnson survey was the community property of Thomas Johnson and his wife Sarah; that Johnson is dead, and that plaintiff claims under his children, and that the deed for the land to plaintiff and his children is from Johnson's children; that defendants claim under deed from the widow Sarah Johnson; and that the lands were patented to Thomas Johnson.

It appeared in evidence that Mrs. Johnson contracted to sell the southwest quarter of the 640-acre tract to one John Straughn in 1855; that Straughn was to have the 160 acres surveyed; that in his survey, made by one Shaw, the north line of the southwest quarter was placed about seventy varas north of the line subsequently made by McLendon.    The Straughn line was marked, but in the deed from Mrs. Johnson in 1859 to Straughn the marked line was not called for, but the course and distances, such as would not include land beyond or north of the south half.

Neither Mrs. Sarah Johnson nor the heirs of her husband participated in or approved of this Straughn survey.

The further facts necessary to understanding the opinion are given in it.

*L. J. Farrar,* for appellants.—1.   The cotenants of plaintiff were necessary parties to this suit.   Story's Eq. Plead., sec. 159; Hawe's Parties to Actions, sec. 18.

2.   A defect in parties plaintiff may be taken advantage of without a plea in abatement.   Holliman v. Rogers, 6 Texas, 91.

3.   The J. M. Straughn survey having been made in 1855, and the lines thereof marked and a deed thereto made by one of the cotenants of the 640 acres, and placed on record in 1860, after more than thirty years from the date of the survey, followed by an actual possession since 1870, will be presumed to have been a legal partition, no objections being made in the meantime by any of the cotenants.   Freem. on Conten. and Part., sec. 408; Herm. on Estop., secs. 507, 523.

4.   If under the facts of this case this survey of the 160 acres in the southwest corner of the 640-acre tract in 1855 for J. M. Straughn can be regarded as a partial partition, then there is only a question of boundary, and defendant's north line marked with its bearing trees must control and fix the lines.   Stafford v. King, 30 Texas, 271; Bolton v. Lann, 16 Texas, 110.

5.   Defendants acquired title under limitation of three years.   Rev. Stats., arts. 3192, 3194; Williamson v. Simpson, 16 Texas, 433; Whitehead v. Foley, 28 Texas, 13; Marsh v. Weir, 21 Texas, 109; Thompson v. Cragg, 24 Texas, 597; Wood on Lim., secs. 269, 270.

*Burrow & Kinkaid,* for appellee.—Parties.   Pitcher v. Kirk, 55 Texas, 208; Titus v. Johnson, 50 Texas, 224.

Limitation.   Thompson v. Cragg, 24 Texas, 582; Veramendi v. Hutchins, 48 Texas, 551; Sanders v. Silvey, 55 Texas, 46.

As to the agreement for the division line.   Johnson v. Johnson, 65 Texas, 87.

COLLARD, JUDGE.—There was evidence sufficient to support the finding of the court below that Parton, the plaintiff, and Pringle, in 1878, while the latter owned and lived on the land now claimed by defendants, and under whom they claim, agreed to have the disputed line between them run out and established by McLendon, and that the line was so run and established by McLendon, dividing the 640 acres into two equal parts, both parties concurring therein.   It is not our province in such cases to reverse the finding of the court.

Outside of this, however, if there had been no agreed location of the division line, there is evidence tending to show that the court was correct

in fixing the boundary where he did. The line as established by the court divides the land into two equal parts, and gives to plaintiff the land on the north of the line. Plaintiff claimed under the heirs of Thomas Johnson, deceased, and defendants under Johnson's widow Sarah Johnson, the land having been their community property. The heirs sold the north half of the survey, and Mrs. Johnson sold the south half. None of the parties pretended to convey more than one-half of the land. There was never, so far as the record shows, any division line between the heirs and Mrs. Johnson, they conceding to her the right to sell the south half and she conceding them the right to sell the north half.

In 1855, before she sold the southwest quarter section to J. M. Straughn, in anticipation of buying the land, the latter had the survey run out, extending it as far north as defendants claim it to be, marking the north line. At this time Mrs. Johnson and the heirs of Johnson were in Washington County. In 1859 she made the deed to Straughn, calling for the northeast corner at a stake from which a post oak 12 inches in diameter, bearing north 5 degrees west, 65 varas; and witness Phillips, who was present when the line was run, says there was such a tree at the northeast corner as run; that he pointed out the tree to Parton about the time he bought from the heirs (a statement denied by Parton). But there is no evidence showing that any of the parties knew that the line was too far north; none that Mrs. Johnson knew it, for her deed only purported to convey the southwest quarter, and calling for the east and west lines as 860 varas long, while they must be extended considerably over that to reach the line; nor is there any pretense that the heirs of Johnson were in any way connected with the transaction or knew anything about it. When the heirs conveyed to plaintiff the description was for their interest in the north half of the section, calling for abutting surveys, and to the "south by the one-half of the Johnson survey and lines." This description does not indicate that the heirs were intending to adopt the Straughn *line* as their south boundary, or that they knew there was such a line. When Willie Straughn conveyed the 80 acres or north half of this quarter section to Pippin, the call for witness trees at the northeast and northwest corners was dropped, and he merely called for a stake in the prairie at each of the corners, without bearing trees, fixing the length of the east and west lines at 430 varas. The same description was followed in other mesne conveyances until we come to the last deeds of Pringle to the defendants, made to one in 1883 and to the other in 1885, after the dispute arose, and when it was known the Straughn line was too far north. In Pringle's deeds he made the east line of the 80 acres 457 varas long, instead of 430 as in Willie Straughn's deed, and the west line 483¾ varas long, calling to run north to the original division line made by the Johnson heirs, thus assuming to designate the Straugh line. So we see there is nothing to show that the Johnson heirs were bound by

the Straughn line, and that the court was justified by the facts, without. regard to the agreed line between Pringle and Parton, in establishing the· division line in the center of the 640-acre survey.

It follows from the above that the three years statute of limitations, will not apply, because defendants failed to show title to the land in controversy. The application of the five years statute will not be discussed because the assignment of error is abandoned.

There is ample evidence to show that defendants and those under whom they hold have been in possession of the eighty acres more than ten years. before the institution of the suit; but there is a difficulty in applying the ten years statute to the occupancy proved. Generally a mere adverse possession will be limited to boundaries designated in the deeds under· which the occupant claims. Pearson v. Boyd, 62 Texas, 541. And where the improvements extend over the boundaries actually embraced in the deed so as to enclose a small portion of the adjoining tract, limitation will not apply except to the land actually enclosed. Bracken v. Jones, 63 Texas, 187. The deeds from Willie Straughn down to Pringle fail to describe the eighty acres further than as the north half of the southwest quarter of the section, and designate no lines or corners indicating that the north line was located where defendants say it was. The deed of Archer to Pringle, in 1877, was recorded and gave notice that Pringle was only claiming the eighty acres, whose east and west lines were only 430 varas long. There is nothing in the evidence outside of the deeds tending to show that Pringle, or the parties under whom he holds, was. claiming to the Straughn line, at least up to 1878, while McLendon was running the partition by agreement between the parties. It is in proof' that at that time he repudiated the line then being run by McLendon,. and said he claimed to the other line, though the court found as a fact. that he agreed to the establishment of the McLendon line as the proper line between him and Parton. This line, the one adopted by the court. as the true boundary, cut off fifteen feet of Pringle's fence, and we might. hold that defendants could recover the disputed land up to the fence, but. for the fact that the evidence does not show that the fence was placed. there ten years prior to the suit. The evidence does not show that any· of the improvements were made north of the center line, except the fence, which was there in 1878. This being the case, we must say the evidence does not support the plea of ten years limitation. Constructive possession merely will not be extended beyond the limits of the boundaries in the deeds, in the absence of evidence showing actual and notorious claim or actual occupancy. We find no error in the court's judgment in this respect.

The questions presented in this case are not purely of boundary—that. is, merely to ascertain where the line between the parties is. It is a suit against an alleged trespasser, showing that he claimed and occupied land ·

of plaintiff unlawfully, to dispossess him, and to force him back upon his own land; to which defendants responded by pleas of title and limitation, which pleas were insisted on in the court below and in this court. The statement of facts shows that there was an agreement between the parties that the suit did not involve title, but was a suit to establish a boundary line; admitting that plaintiff claimed under the heirs of Johnson, and that defendants claimed under Mrs. Sarah Johnson, in whom the title was. But it is clear that neither the parties nor the court construed the agreement to limit the issues to boundary alone. Had such been the construction of the agreement, defendants could not have insisted on their pleas of limitation, and the investigation would have been at an end when the evidence as to boundary was admitted. The court and the parties treated the agreement on the trial as an admission of paper title only, leaving all the other issues to be tried, except the one of compensation for improvements set up by Carley, which it was stipulated he should have judgment for, to-wit, $36.50, in case plaintiff recovered. Defendants pleaded title by limitation, which has not been abandoned; evidence was heard without objection on the pleas; and the case comes here with the limitation questions more prominent than others, and made so by the brief of defendants below. So we conclude that the suit was in fact as it was in form—an action of trespass to try title. Jones v. Andrews, 72 Texas, 5; Spence v. McGowan, 53 Texas, 30; Barbee v. Stinnett, 60 Texas, 167; 58 Texas, 242.

Therefore, following other decisions of the Supreme Court of this State, we must hold that plaintiff Parton, who only exhibited title to an undivided interest in the land in controversy, could maintain this action without joining his cotenants. Pilcher v. Kirk, 55 Texas, 208; Sowers v. Peterson, 59 Texas, 220; Telfener v. Dillard, 70 Texas, 139. Defendants' plea in abatement should not have been sustained.

Finding no error in the judgment of the court below, our opinion is it ought to be affirmed.

*Affirmed.*

Adopted November 12, 1889.