First National Bank of Decatur v. F. M. Houts.

No. 7486.

1. **Wrongful Seizure Under Writ of Sequestration and of Attachment.**—Cattle mortaged to secure a creditor were seized under a writ of sequestration and a writ of attachment, both sued out by the creditor. There was but one act of seizure under both writs. Subsequently the cattle were turned over to the trustee and sold for benefit of the plaintiff creditor. The defendant reconvened, seeking damages for the wrongful seizure under both writs: *Held*, it can not be affirmed, that because the property of the defendant was rightfully subject to seizure by a writ of sequestration, and was so seized, no damages could be caused by wrongfully levying upon it at the same time a writ of attachment and taking possession of and holding it at the same time wrongfully as well as rightfully.

2. **Same—Liability for Wrongful Seizure.**—The court correctly charged, that before recovery could be had it must be shown that one of the writs was wrongfully sued out. If one of the writs was rightfully sued out and the other not, then the damages for the unlawful seizure only should be recovered, if distinguishable from those arising from the rightful seizure.

3. **Same.**—As there was but one seizure, and it is not pretended that the damage caused was distinguishable so as to be capable of being parcelled out between the two writs, the defendant (in reconvention) must be allowed to recover the entire damages, or must be denied any; and as the confusion resulted from the plaintiff's unlawful acts, the plaintiff rather than the defendant should suffer the consequent loss.

4. **Unlawful Levy of Attachment and Return of the Property.**—We do not think that the plaintiff could relieve itself from damages resulting from a wrongful seizure under either of the writs by subsequently turning the property over to the trustee and his sale under the power, without the consent of the defendant. The court, therefore, properly instructed the jury, that if the cattle seized had been turned over to the trustee, and without consent of defendant, and sold by the trustee, they should find for the defendant (in reconvention) the difference, if any, between the amount realized by the trust sale and the market value of the cattle.

5. **Acts Not an Estoppel.**—That the defendant aided the trustee making the sale, endeavoring to realize as much as possible upon it, did not estop him from claiming redress for the unlawful seizure before they were turned over to the trustee. Nor would defendant's having caused the cattle to be seized for payment of his taxes further affect his rights than to charge him with the taxes assumed and paid out of the trustee's sale of the cattle.

6. **Practice—Parties.**—Suit on and to foreclose chattel mortgage against a principal and surety on note declared on. The surety was not served with citation, nor named in the judgment. The appeal bond by the plaintiff did not name him: *Held*, that it will be presumed that suit was dismissed as to the surety.

Appeal from Wise.　Tried below before Hon. J. W. Patterson.

*Carswell, Fuller & Terrell*, for appellant.—1.　Where a writ of sequestration and a writ of attachment are simultaneously issued in the same cause and levied upon the same property, in a suit for damages for a

wrongful levy, it is error for the court to charge the jury, that if either writ is wrongfully issued and levied they may find the damages occasioned by the levy of both writs.

2. The charge of the court should be predicated upon the case made by the evidence, and a charge otherwise likely to mislead, which submits an issue upon which there is no evidence, is error. Dahoney v. Allison & Moore, Posey's U. C., 112.

3. Appellee, by expressly authorizing appellant to pay a debt of his out of the proceeds of the sale of the cattle by the trustee, is estopped from charging appellant with a conversion of said cattle in making such sale. McConnell v. The People, 71 Ill., 481.

4. If appellee was present at the sale of the cattle and knew its purpose, and assisted in the same, and assented to the passing of title by the same for the purposes it was being made, he is estopped from claiming that such sale is a conversion of the cattle.

No brief for appellee reached the Reporter.

HENRY, Associate Justice.—This suit was brought by the appellant against F. M. Houts, the appellee, and J. J. Long, upon three promissory notes, one of which was signed by both defendants, and the other two by Houts alone.

The defendant Houts had executed a deed of trust to secure said notes upon all of his graded shorthorn and Hereford she cattle then on his ranch in Wise County, consisting of about 300 head, containing authority for the trustee, one Mayes, to take possession of and sell the cattle, and apply the proceeeds, if said notes should not be paid at their maturity.

At the time of filing its original petition the plaintiff sued out against the defendant Houts writs of sequestration and attachment.

The writs of sequestration and attachment were executed by the same officer, and by one and the same act.

A levy upon 192 head of graded cattle, besides a lot of horses and thoroughbred cattle, was endorsed by the sheriff upon the writ of attachment, and he endorsed upon the writ of sequestration a levy upon 182 head of graded cattle.

Both endorsements referred to the same lot of graded cattle.

There were other liens in favor of other parties upon the graded cattle and the horses, which it is not necessary to specifically describe.

All of the property seized by virtue of the writs was taken into his actual possession by the sheriff, and none of it was replevied.

The defendant Long does not appear to have been cited. He never appeared, and no mention was made of him in the final judgment or elsewhere in the record, except in the original petition, until the assignment of errors.

The defendant Houts answered, and pleaded in reconvention for the recovery of damages, actual and exemplary, on account of the writs of sequestration and attachment.

The cause was tried with a jury, and they returned a verdict in favor of the plaintiff for a balance due upon its note for $1269.97, and in favor of the defendant Houts upon his reconvention for $1785 actual damages.

After the levy was made the parties made a settlement about the thoroughbred cattle, in regard to their value and disposition, as well as the defendant's claim for damages in respect to the levy upon them, under which they were released from the levy and eliminated from the suit.

The horses were subject to a deed of trust in favor of a third party, and they were delivered by the sheriff to the trustee in that instrument, and sold, and the proceeds of the sale were appropriated by him to the debts for which they were mortgaged.

The sheriff likewise delivered the graded cattle to the trustee named in the mortgage upon them made to the plaintiff bank, and they were sold by the trustee in pursuance of the terms of that instrument, and the proceeds of the sale were paid to plaintiff and credited upon its notes against the defendant Houts.

The sheriff, when he made the levy, took the cattle into his actual possession, and caused them to be removed to another place.

Before the sales were made by the trustees, the sheriff, by the direction of the plaintiff, released the levies and delivered the property to them so that they could sell it under their powers.

On the day of the sale of the graded cattle, and before they were sold, the assessor of taxes, at the instance of Houts, levied upon them for his taxes. They were released before they were sold, upon the plaintiff's assuring the payment of the taxes, which it did at the instance and request of Houts, who owed them.

There was some conflict in the evidence as to whether or not Houts consented to the release of the property by the sheriff for the purpose of its sale by the trustees. It is contended by the appellant, that some circumstances in evidence tend to show that he did so consent. His having done so was expressly denied by both Houts and the sheriff.

The evidence unequivocally shows that Houts was present at the sale, and gave both advice and assistance in conducting it, so as to make the property bring the best price, and that he made then no objection to the sale, except with regard to the last lot of the cattle that was sold, and in that instance he objected only upon the ground that that lot of the cattle was mortgaged to another party, and was not included in the mortgage to the plaintiff.

The evidence as to whether or not any of the property sold by the trustees brought its fair market value was conflicting. The defendant introduced some evidence to the effect that none of it brought such value.

The charge of the court correctly eliminated the thoroughbred cattle, which were levied upon by the attachment alone, from the consideration of the jury on the issue of damages.

In regard to the horses, the court charged as follows:

"If the jury believe that prior to the levy of the plaintiff's attachment on the 14 head of horses, the defendant executed the deed of trust to Martin; that at the time of the levy the debts were unpaid, and the mortgage was in force; that one of the owners of one of the secured debts demanded of the trustee that he should proceed to sell the property in pursuance of the authority conferred upon him; that after the levy the plaintiff caused the horses to be turned over to Martin to be sold by him, and that he did sell them as such trustee, then the defendant can not recover anything on account of the levy upon said horses."

There was no controversy about the proof of the facts here referred to as forbidding a recovery by the defendant of damage on account of the levy upon the horses.

The court gave upon this issue a further charge, of which appellant complains on the ground that "the charge of the court should be predicated upon the case made by the evidence, and a charge otherwise likely to mislead, which submits an issue upon which there is no evidence, is error."

The charge here complained of reads as follows:

"If, on the other hand, you do not believe that the horses, after being levied on, were turned over to said Martin to be by him sold under said deed of trust, or if you do not believe that the deed of trust was signed by the defendant, and that the same was still unsatisfied at the time said horses were turned over, and that the defendant was then indebted to J. Ullmann & Co., and that the said Martin was called upon by a member of said firm of Ullman & Co. to advertise and sell said horses under said deed of trust; and if you believe and find the attachment was wrongfully sued out, and you believe the said horses and mules were sold by the said Martin, and the proceeds arising from said sale were applied by said Martin to the payment of said debts due by said Houts, and that the said horses when so sold brought less than their fair market value; then you will find for the defendant the difference between the fair market value and the price for which they sold, with 8 per cent interest thereon from date of said sale."

The whole charge relating to the issue should be kept in view, and it was unquestionably as favorable to the plaintiff as it was possible to make it. It was, in effect, a charge to find in his favor on that branch of the case, and left nothing for the jury to consider on defendant's claim for damages but the levies upon the graded cattle.

The appellant assigns error upon the court's having given the following charges:

"If you believe from the evidence that the plaintiff wrongfully sued out and levied either the writ of sequestration or attachment upon the defendant's horses and cattle, and that the defendant on account of said levies sustained actual damages, you will find for the defendant the actual damages he thereby sustained; and in determining the damages, if any, that the defendant may be entitled to, you will look to the evidence and this charge." And again: "If you believe and find from the evidence that either the writ of attachment or sequestration was wrongfully sued out and levied upon defendant's property, and you further believe the affidavits for said writs were wrongfully sued out and levied, and that the same was also sued out maliciously and without probable cause, you may find in addition to actual damages, if any found, for defendant, exemplary damages in any sum not to exceed the sum sued for." And again: "In order for defendant to recover damages, the burden of proof is upon him to show by a preponderance of evidence that the writs, or one of them, was wrongfully sued out; that is, defendant must show that the facts stated in the affidavit for the writs, or for one of them, are not true."

And also for refusing to give the following charge at the request of the plaintiff:

"Before you can find for the defendant on his claim for damages by reason of the alleged levy upon the graded *she* cattle in question, you must find from the evidence that both the writ of sequestration and the writ of attachment were wrongfully sued out; and the burden of proof is on the defendant Houts to show by a preponderance of testimony that said writs were so wrongfully sued out."

The requested charge should not have been given. As we have seen, the court by other charges had so instructed the jury that they could not fail, upon the undisputed evidence, to find in favor of the plaintiff in regard to the seizure of the horses and the thoroughbred cattle. The graded cattle were the only property levied upon under the writ of sequestration. They were also levied upon under the writ of attachment, and they were the only property seized under both writs. There was but one act of seizure, and there is nothing in the evidence to apply the damage to one writ rather than the other.

It can not be truly affirmed that because the property of the defendant was rightfully subject to seizure by a writ of sequestration, and was so seized, no damage could be caused by wrongfully levying upon it at the same time a writ of attachment, and taking possession of and holding it at the same time wrongfully as well as rightfully.

The conditions of the bonds required to replevy the property under the two writs are not the same in every respect.

The court correctly charged, that before the defendant could recover at all, it must appear that one of the writs was wrongfully sued out. If

either of them was sued out maliciously, as well as wrongfully, the right to recover exemplary damages existed.

It is true that if one of the writs was rightfully and the other one wrongfully sued out, and the damage caused was distinguishable, then only that caused by the wrongful one was recoverable.

In this case it can not be perceived why one of the writs would not have protected the plaintiff's rights with regard to the graded cattle, and we can see no justification for the levy of both. As there was but one seizure, and it is not pretended that the damage caused was distinguishable so as to be capable of being parcelled out between the two writs, the defendant must be allowed to recover the entire damage or he must be denied any; and as the confusion resulted from the plaintiff's unlawful act, it, rather than the defendant, should suffer the consequent loss, if there was any.

The record does not show whether the verdict for damages was based upon the levy of both writs or of one only, nor if upon one alone, upon which one.

When the whole of the charges given and refused are considered, we do not think that a reversible error was committed.

It is contended, that "the court erred in charging the jury, that if the cattle levied upon were by direction of the plaintiff turned over to L. C. Mayes as trustee, without the consent of defendant Houts, and that said Mayes sold them and applied the proceeds as provided in said trust deeds, then they should find for defendant as damages the difference between the market value of said cattle at said time, and the proceeds thereof credited on defendant's notes."

And in refusing to charge them as follows:

"If you believe from the evidence that the cattle levied upon herein by the writs of sequestration and attachment were by the sheriff, at plaintiff's instance, released from said writs, turned over to L. C. Mayes, the trustee in said mortgages, and that they were the cattle described in said mortgages, and that Mayes advertised and sold said cattle according to the provisions of said mortgages, and applied the proceeds to the payment of the debts sued on and secured by said mortgages, and that defendant Houts was present when they were so released and turned over and sold, and made no objection to the same, then you will find for the plaintiff upon the question of conversion of said cattle."

We do not think that the plaintiff could relieve itself from damages resulting from a wrongful seizure of the cattle under either of the writs, by subsequently turning them over to the trustee, and their sale by him under his power, without the consent of Houts. The mere failure of Houts to object would not make the original unlawful act a lawful one. The plaintiff had the right to require the trustee to sell the property according to the terms of the deed of trust, but it had no right to cause it

to be first unlawfully seized by the sheriff, and then to be by him turned over to the trustee. Such a wrong may properly be treated as affecting the entire transaction, and we can not say that the rule for estimating the damage applied in the charge of the court was not the proper one for such unlawful conversion of the property. The mere presence of Houts at the sale without objecting, and his other acts tending to make the property bring its full value, should not be construed to his prejudice. The plaintiff was not induced to alter its own position thereby, nor was it prejudiced to any extent. On the contrary, it seems that the plaintiff was benefited by the presence of Houts at the sale and his conduct there. If the cattle were going to be sold under circumstances that would convey to the purchaser the title to them, it was sensible and commendable, as well as just, in Houts to so conduct himself as to make the property bring its full value.

The conduct of Houts in favoring the seizure of the cattle by the tax collector, and in advising the payment of the tax by the plaintiff, should not have been permitted to affect the decision of the case further than was done. Houts thereby became liable to account to the plaintiff for the amount paid to satisfy the taxes, and it was allowed to it in the judgment.

The court properly refused to give to the jury the charge upon that issue that was requested by the plaintiff.

The appellant assigns error upon the failure of the court " to try the case and render judgment finally disposing of the same as to the defendant Long."

The appellant having failed to show that it ever caused Long to be cited, or that he ever voluntarily appeared, and it not having taken any judgment against him, and not having joined him in its appeal, we are left to presume that it had discontinued its cause as to him. If it was seeking a judgment against him, it should have brought that fact to the attention of the District Court in some way, in addition to merely mentioning him as one of the defendants in its petition. An error in failing to render a proper judgment as to him would not necessarily lead to a reversal of the judgment as to the defendant Houts.

The judgment is affirmed.

*Affirmed.*

Delivered May 26, 1892.