### NOLAND et al. v. WEEMS.

(Court of Civil Appeals of Texas. El Paso. Nov. 29, 1911. On Motion for Rehearing, Dec. 20, 1911.)

1. COURTS (§ 91*)—STARE DECISIS—BOUNDARY LINE.

A former decision of the Court of Civil Appeals with reference to the location of a tract of land and its boundaries was conclusive of the question decided as against those claiming under one of the parties in a subsequent proceeding.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325, 326; Dec. Dig. § 91.*]

2. ADVERSE POSSESSION (§ 96*)—EXTENT—CONSTRUCTIVE POSSESSION.

Where a person's actual possession of land was confined to a specified tract, the lines of which were fixed and continuously known and recognized by adjacent owners, his possession within the lines could not be extended by construction to any other land.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 537–594; Dec. Dig. § 96.*]

3. ADVERSE POSSESSION (§ 16*)—ELEMENTS.

That cattle were pastured in an inclosure for about three years, in addition to proof that some timber was also cut within the inclosure, without proof that the use was continuous or that the timber was cut on the land in controversy as distinguished from other land also within the inclosure was insufficient to establish adverse possession, since cultivation, use, and enjoyment must supplement possession in order to create title by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 82–89; Dec. Dig. § 16.*]

4. DEEDS (§ 38*)—DESCRIPTION—VALIDITY—LOCATION.

Where the description contained in a deed is such that it is susceptible of location on the ground, when aided by parol evidence, any ambiguity therein will be deemed latent, and an objection that the description is insufficient overruled, especially where the instrument is old.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–79; Dec. Dig. § 38.*]

5. ADVERSE POSSESSION (§ 80*)—DEEDS—DESCRIPTION.

Where a deed to certain land contains a description which, though indefinite, is sufficient with the aid of parol evidence to enable the tract to be located on the ground, and is sufficient to give notice to the true owner of the point to which the holder of the deed is claim-

---

ing, it is sufficient to inaugurate a title under either the five or ten year statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 80.*].

On Motion for Rehearing.

6. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENT.

A statement in a brief to support an assignment of error which is not made up from all the evidence in the record, and which sets out counsel's conclusions from the testimony, instead of the evidence, is fatally defective.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

7. APPEAL AND ERROR (§ 748*)—ASSIGNMENTS OF ERROR—DEFECTIVE STATEMENT—EFFECT.

Where a defective statement of the facts was subjoined to an assignment of error so as to present a proposition of law supported by certain facts out of all those in a large record, and the Court of Appeals based its opinion on the facts presented and on such additional facts as it was able to find on the subject, it would not grant a motion that the court file additional conclusions of fact based on additional facts, called to its attention on a petition for rehearing.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 748.*]

Error to District Court, Harris County; Norman G. Kittrell, Judge.

Trespass to try title by B. F. Weems against W. L. Noland and others. Judgment for plaintiff, and defendants bring error. Affirmed.

A. C. Van Velzer, Wilson, Dabney & Meachum, and Lewis Fogle, for plaintiffs in error. Hutcheson & Hutcheson, for defendant in error.

PETICOLAS, C. J. This was a suit in trespass to try title by B. F. Weems against J. J. Settegast, W. L. Noland, and L. D. Henderson, to recover about 400 acres of land, part of the Eli Noland league in Harris county, Tex. There was a severance as to Settegast. Noland pleaded that Henderson had acquired his title to 240 acres. Henderson disclaimed as to 160 acres, and as to 240 acres pleaded a general denial, not guilty, and limitation. The case was submitted to the jury on special issues, and plaintiff had judgment and defendants appealed.

The two main contentions of the plaintiffs in error are (a) that the deed from Eli Noland to B. A. Noland and other deeds in the plaintiff's chain of title, especially the deed from Fornish to H. E. Adams, are void, because the descriptions therein are patently ambiguous; (b) that Settegast, under whom they claim, had a limitation title by his possession of the Marshall 200-acre tract, which would constructively be extended to the boundaries of a 617-acre tract to which Settegast later acquired a deed, and which embraced the 400-acre tract in controversy, which was called the "Fornish tract." In this connection, they also contend that there was sufficient evidence of possession by Set-

tegast of all the land embraced in his 617-acre tract to have submitted the issue of limitation in their favor to the jury, even if his actual possession of the Marshall tract would not constructively extend to the boundaries of the 617-acre tract.

Eli Noland, being the owner of the Noland league, in 1841 conveyed the 400 acres in controversy, which by chain of title vested in plaintiff, B. F. Weems. In 1854 he conveyed 200 acres of the Eli Noland league to T. W. Marshall, which by chain of title vested in one Pfeiffer. In 1900 Pfeiffer conveyed to Settegast 617 acres in the Eli Noland league, which included and embraced the Marshall 200, the Fornish 400, and, perhaps, some little additional land. The testimony shows that the Pfeiffers claimed only the Marshall 200. They did not claim the Fornish 400; they recognized it as the Fornish. Notwithstanding this, they conveyed to Settegast 617 acres, which included the Fornish 400, saying that such deed was made because Settegast told them that he had had the lines run in the Noland and there was plenty of land for all the claimants.

It will be observed that Settegast acquired the Marshall 200 from vendors whose title thereto had originated in Eli Noland. Settegast's claim of the balance of the 617 acres to which the Pfeiffers gave him deed is not acquired from Noland, in that he (Noland) never parted by his conveyance with more than the Marshall 200, and the claim to the excess in the 617-acre tract over the Marshall 200-acre tract may be said, we think, to be a junior title. If the Peter Pfeiffer who joined in the deed to Settegast is not the Peter Pfeiffer who got title to the Marshall 200 by chain of title from Eli Noland, it but makes more certain that the Settegast title to the excess in the 217 is a junior title, as in that event Settegast acquires his title to the 617 from a stranger to the Noland title. The plaintiffs in error contend that the general rules apply on the question of the extension by construction of Settegast's possession to boundaries of the 617 acres; that is to say, that Settegast being in possession of the Marshall 200 and having a deed to 617 acres, including the Marshall 200, his possession would constructively extend to the boundaries of the 617 acres.

[1] In a suit formerly tried in Harris county, one Blaske, having a judgment against Eli Noland and his unknown heirs, sued J. J. Settegast for certain land in Eli Noland league in Harris county, which adjoined the T. W. Marshall 200 acres above referred to. The case was appealed, and is reported in 123 S. W. 222, and therein it was held that the lines of the Marshall tract having been fixed many years ago, and, as so established, having been continuously known and recognized by Eli Noland and those

claiming under him, Settegast's possession could not be extended by construction to the boundaries of the 617-acre tract; which decision was founded on Turner v. Moore, 81 Tex. 206, 16 S. W. 929.

It will be noted that the decision referred to concerns this particular Marshall tract and this particular 617-acre conveyance from Pfeiffer, and as we are of opinion that the evidence in this case shows that the Marshall lines were fixed many years ago, and were known and recognized by those claiming under Eli Noland, as to the main proposition, we are necessarily controlled by that case.

[2] We therefore hold that Settegast's possession of the Marshall 200 acres could not be extended by construction to the boundaries of the 617-acre tract.

[3] There remains on this branch of the case the inquiry whether there was evidence of possession by Settegast of the land in the 617-acre tract, outside of the Marshall 200-acre tract, for such time and under such conditions as would have required the submission to the jury of an issue of limitation in favor of plaintiffs in error. It will be kept in mind that the sufficiency of this testimony must be tested just as though there was no possession on the Marshall tract.

The point is complicated by the fact that Settegast's fence was not on the lines of the 617-acre tract, but included also another 514-acre tract owned by his brother. We have carefully examined the testimony on this subject from the record. The deed from Pfeiffer et al. to Settegast for 617 acres was filed for record September 19, 1900. In 1907 Settegast conveyed the 240 acres to one Marks, and in 1909 Marks conveyed it to Henderson, plaintiff in error. The only possession which is relied upon by the plaintiffs in error as showing the limitation title is from 1900 to 1907, possession by J. J. Settegast.

Settegast is indefinite as to when he built the fence, but testifies that at some time from one to three years after he received the deed from Pfeiffer, he built a fence which included the 617 acres and another 514-acre tract on the west. The testimony all shows that the only actual occupancy was on the Marshall tract, and the very great preponderance of the evidence is to the effect that Settegast's fence was never kept up; that it was down continuously from the time of its erection. Settegast, however, testifies that he kept up the fence, and that he had cattle in the inclosure. He admits that the fence was down at different times, but testifies that up to the time he sold the 240 acres he kept the fence up all the time; that is, that he had men go around it frequently and fix it up. He agrees that the mill was on the Marshall tract.

With reference to the period of time for which he continued to keep cattle in the inclosure, he testifies, in one place: "I kept stock in the pasture the whole time Worth was living on it. I think he was there three years. When I kept stock in it I kept the fence up all the time. I had no interest in keeping the fence up after I kept no stock in there." He says again: "I put stock out there about 1903. I kept them in there about three years, then took them out and had the mill on the land." He testifies that he paid the taxes on the 617 and the 514 together; that the 514 belonged to his brother's estate, and he would pay all the taxes and charge his brother's estate with what it had in there.

We think that while it may be doubted under this statement of the testimony whether Settegast kept the fences up save when he had stock in the pasture, that to the extent of keeping up the fences the testimony would have been sufficient to have gone to the jury on an issue of limitation, notwithstanding the very great preponderance of evidence to the effect that the fence was not kept up. We do not find, however, any claim or statement in Settegast's testimony that stock was kept in this pasture at any time for more than three years. In their statement under this assignment plaintiffs in error have given us no reference to any portion of the testimony, if there be any, which shows that stock was kept in this pasture more than three years. We have been unable to find any testimony tending to show that stock was kept in the pasture more than three years. We therefore conclude as a fact that cattle were pastured in said inclosure, but only for three years. There is some little testimony of the cutting of timber within the inclosure, but it is not shown to be continuous, nor is there any evidence tending to show that it was cut on the 617 and not on the 514. Something more than mere possession is necessary to complete by limitation a bar to an action. There must be also cultivation, use, or enjoyment; there must be acts of ownership.

As has been seen, the possession on the Marshall 200 cannot be extended by construction to that portion of the 617 acres outside of the Marshall 200. The only evidence adduced by plaintiffs in error tending to show limitation as to it was the fencing, the cattle not having been kept on the land sufficient time to complete the bar. In McDonald v. McCrabb, 47 Tex. Civ. App. 259, 105 S. W. 238, it is held that mere naked fencing was not sufficient to support the statute of limitation. To the same effect in reasoning, and to some extent on the facts, are Hutcheson v. Chandler, 47 Tex. Civ. App. 124, 104 S. W. 434; Nona Mills Co. v. Wright, 101 Tex. 14, 102 S. W. 1118; Peden v. Crenshaw, 98 Tex. 365, 84 S. W. 362; Niday v. Cochran, 42 Tex. Civ. App. 292, 93 S. W. 1028; Buster v. Warren, 35 Tex. Civ. App. 644, 80 S. W. 1067; Pendleton v. Snyder, 5 Tex. Civ. App. 427, 24 S. W. 363. We therefore conclude that the

mere fencing of the tract, without other acts of ownership than as indicated, did not suffice, and that the trial court did not err, under the facts in this case, in refusing to submit to the jury the issue of limitation for the plaintiffs in error.

[4] With reference to plaintiffs in error's contention of the patent ambiguity in the deeds mentioned, the description in the deed from Eli Noland to B. A. Noland was as follows: "Commencing on the northern side of Green's bayou, where the eastern line of the Thomas Marshall survey intersects said bayou; thence running northerly with the aforesaid eastern line to the northern boundary line of the Eli Noland league; thence running eastwardly on the northern boundary line to a point from whence running southerly to the aforesaid Green's bayou; and thence westwardly midchannel of and with the said Green's bayou to the place of beginning—will be sufficient to embrace an area of four hundred acres of superficies within the above designated limits."

The description of the land in the deed to H. E. Adams was as follows: "Beginning at a point in the middle of Hall's bayou where the east line of the Marshall 200 acres crosses said bayou; thence north 3,350 varas to north line of Eli Noland league; thence east 670 varas along said north line to a mound; thence south 3,475 varas to middle of deep gully where it enters Hall's bayou; thence up Hall's bayou with its meanderings to place of beginning; less right of way of seven and one-tenth acres heretofore conveyed to the Aransas Pass Railroad—containing three hundred ninety-two and nine-tenths acres, more or less."

Hall's bayou is shown to have been a branch of Green's bayou, sometimes called a fork or prong of Green's bayou.

The description in the deed from Eli Noland to Thomas W. Marshall is as follows: "200 acres of land lying and being situate on the spring fork of Green bayou and described as follows: Commencing at the N. E. line of Eli Noland league and running across said league to the southwestern boundary line, and bound on the N. W. by line across said league on the northwest end of said league a reservation to Eli Noland 1,000 acres of land; thence from said line S. E., making 200 acres, inclusive."

It is contended by the plaintiffs in error that as the lines of the Eli Noland league ran north and south and east and west with the cardinal points of the compass, and as the description in the conveyance of the Marshall tract commences on the northeast line of the Eli Noland league and runs across the league to the southwest line, that the ambiguity in that description is such that the land cannot be located on the ground. It is further contended that as the deed from Eli Noland to B. A. Noland, and other deeds in defendant in error's chain of title, called to begin on the east line of the Marshall 200 acres, that their description is, therefore, impossible of location on the ground and the deeds are void. As ancillary to deciding this question it may be stated that in the case of Gorham v. Settegast, 44 Tex. Civ. App. 254, 98 S. W. 673, it was decided in construing the particular deed from Eli Noland to Thomas W. Marshall that the ambiguity was only latent, and that it could be rendered certain by the introduction of parol testimony to show what land was really intended by the parties to be conveyed by the instrument. Plaintiffs in error contend that this decision should be limited to holding that on its face the ambiguity was latent, and that said decision in no particular can be construed as holding that it is possible to locate said description on the ground. We do not agree with counsel in this contention. We think the decision there was that the ambiguity was only latent because it was clearly possible to locate it on the ground.

It should be here borne in mind that the deed for 200 acres to Marshall is no part of the defendant in error's chain of title in this case. The specific question before us being whether the description in the deed from Eli Noland to B. A. Noland, in so far as it calls to begin on the Marshall east line, is possible of location on the ground by parol testimony. Plaintiffs in error's contention that it is not possible to do this is based on the fact that the lines of the Eli Noland league run north and south and east and west, and they contend that there is no northeast line of the Eli Noland league, and, therefore, the call in the Marshall deed makes it void, and, the Marshall description being void, the call in the Noland deed for the Marshall east line makes it void. We do not agree with counsel in this contention. Taking the description in the deed to B. A. Noland, it calls to begin on the northern side of Green's bayou, where the eastern line of the Thomas Marshall survey intersects said bayou, thence running *northerly* with the aforesaid eastern line of the Thomas Marshall survey to the *northern* line of the Eli Noland league.

Construing the two deeds together, and assuming that the lines of the Eli Noland league run exactly north and south and east and west, the descriptions are clearly susceptible of the construction that the call in the Marshall deed commencing on the northeast line, in fact, meant commencing on the northerly line.

We may say in this connection that we would not feel at liberty to hold differently from the decision in the case of Gorham v. Settegast, even if we were inclined so to do, but, as a matter of fact, we agree with that decision and are of the opinion that it is possible to locate these descriptions on the ground, using the word "possible" in the sense that they are susceptible of being so

located. The testimony of J. J. Gillespie, which will be later quoted to some extent in this opinion, shows that the Marshall east line is a plainly defined and marked line, marked all along almost its entire length with clear and plain marks on trees which have been there, to his knowledge, for about 32 years. It also shows that the reputation in that community with reference to it was that that particular line was the Marshall east line and the Fornish west line. It also shows that, taking the evidences of the Marshall improvements, this line is at the correct place. In this connection, it may be said that we find nothing in the testimony introduced by the plaintiffs in error to show that the Fornish west line and the Marshall east line are not, in fact, where Mr. Gillespie found them to be. The question was submitted to the jury whether the land claimed by the plaintiff was the same land described in the deed from Eli Noland to B. A. Noland, and the jury answered that it was. The question was also submitted whether the 400 acres referred to in the deed from Eli Noland to B. A. Noland was located at the point where plaintiff claimed it, and the jury answered that it was. The question was also submitted to the jury whether that 400 acres was the same land sued for by the plaintiff, and they answered that it was.

It seems to us that in construing instruments with reference to the title to property as old as this instrument was, it should be the policy of our law to give the instrument effect if possible, and not to devitalize it by strict and rigid adherence to technical common-law rules with reference to descriptions, and where the description, as in this case, is possible to be located, in the sense that it is susceptible of location on the ground, and where the evidence, as it certainly did in this case, did locate it on the ground, and where the jury answered, on special issues, that it had been located on the ground, the result obtained is arrived at in the proper and legal way.

Therefore, all of plaintiffs in error's assignments on the subject of patent ambiguity are overruled.

[5] It is next contended by the plaintiffs in error, the trial court having submitted an issue of 10 years' limitation in favor of the defendant in error, that the testimony was not sufficient to raise an issue of 10 years' limitation in favor of defendant in error, and that, if the testimony was sufficient to raise such issue, the description in their deeds was not sufficient in that the deed to Fornish did not describe any land by metes and bounds so as to identify it or so as to be a basis for limitation title to any specific tract; that the claim of limitation for 10 years where possession did not extend to the boundaries of the tract would, under the statute, only go to the extent of 160 acres,

and that the deed to Fornish did not so describe the 400 acres as that the possession could extend to more than the 160 acres.

Examining, first, the sufficiency of the testimony generally, we find that Allen and Hinkle had a mill on the land for one year. They got their deed in '72. Burton moved on the land in '73 and lived there five or six years. Poske moved there in '75, and lived there five or six years. There was also evidence indicating that during all the time that Fornish owned the land, from 1876 up to 1890 when he sold to Weems, some one was living on the land claiming it for Fornish, holding possession for Fornish, keeping up the fences, using and occupying it. We therefore hold that the evidence as to possesssion and use was sufficient to submit plaintiff's claim of 10 years' limitation as an issue to the jury. Travis v. Hall, 37 Tex. Civ. App. 143, 83 S. W. 426.

Gillespie ran out the west line of the Fornish in 1878, and it appeared to be an old line then. "I have known the Fornish 400 acres 32 years. I did not find any other marked line than the one I have indicated purporting to be the west line of the Fornish, the east line of the Marshall. The general reputation of where that boundary line exists is that it is just where I found it. In locating the Fornish tract there was an established line for the west line of the Fornish. Those trees which I have marked here, a three-pronged birch, where this west line of the Fornish starts at the bayou, also two gums marked with a cross, are still there. I first saw those trees in 1878, the birch being marked at the time, but the gums not. There is no difficulty in locating the 400 acres sold by Eli Noland to B. A. Noland (Fornish tract). I am positive that there are marked trees all along that line."

This witness began at the bayou and described the marks on the Marshall east line as follows: "A three-pronged birch marked 'X' and two gums marked a hack above and a hack below. The next is a birch at 30 feet from the bayou. At 150 feet the next line object is a pine, three hacks. The next line object is some small pines, marked recently. The next line object just south of the railway is an elm, marks, three old hacks. Half way between the railroad and the well site is an elm with an old mark, three hacks. The next is a gum in the ash flat just north of the old mill, three hacks. Next a big pine north of the road to Will Noland's camp, three hacks."

Plaintiffs in error contend that as there are no boundaries fixed and delineated in the deed to Fornish, that the description in said deed is insufficient to extend defendant in error's actual possession to the limits of the land sued for by him, and that his possessory title, if any, should be confined to the 160 acres allowed by the statute. That as he did not describe any 160 acres, the charge

submitting the issue of 10 years' limitation in favor of defendant in error was erroneous, and the case should be reversed on that ground. This presents to our minds the most difficult question in the case.

In Crumbley v. Busse, 11 Tex. Civ. App. 323, 32 S. W. 438, it was held that a tax deed void on its face and patently ambiguous, could not be used under the 10-year statute "as a written memorandum other than a deed which fixed the boundaries of the possessor's claim."

It is evident that this decision does not apply, since we have held that the deed to Fornish was not patently ambiguous nor void. In Doom v. Taylor, 35 Tex. Civ. App. 251, 79 S. W. 1086, it was held that one in possession of 218 acres, whose title was divested by sheriff's sale, could not claim under the 10-year statute to more than his actual possession after the said divestiture by said sheriff's sale. In Pearson v. Boyd, 62 Tex. 541, it was held generally that a mere adverse possession will be limited to the boundaries actually embraced in the deed. In the case of Carley v. Parton, 75 Tex. 101, 12 S. W. 950, it is very difficult to ascertain the exact holding; stating it most strongly in favor of plaintiffs in error, it is to the effect that a description "the north half of the southwest one-quarter" is not sufficient to fix the boundaries under the 10-year statute. These are the only cases that have been cited or which we have been able to find on the 10-year statute. As applicable to the 5-year statute of limitation, there is in this state a long line of decisions, of which the case of Young v. Trahan, 43 Tex. Civ. App. 611, 97 S. W. 147, is illustrative: In that case it was held that under the 5-year statute a description which required extrinsic evidence to locate it will not answer the purposes of the statute and cannot be considered a deed duly registered. In Cantagrel v. Von Lupin, 58 Tex. 570, it was held that a description of the land as "being all the land I own in Harris county" was sufficient under the 5-year statute, and in Bowles v. Brice, 66 Tex. 724, 2 S. W. 729, it was held that all the interest acquired under a certain deed was sufficient description.

It seems to us that the rule announced in Young against Trehan is to some extent fallacious. To illustrate: A description of lot 2 in block 6 in the Alexander addition in the city of El Paso would clearly be sufficient, under the 5-year statute, as a deed fixing the boundaries and description of that property, and yet, it is apparent that extrinsic evidence would have to be resorted to to locate said lot and block. Again, a description of a survey to commence at a marked corner, something extrinsic of the deed, would have to be resorted to; the marked corner would have to be located on the ground. These illustrations are used not

as indicating that the case of Young against Trehan is wrong in result, but as indicating our belief that the true test of the sufficiency of a description to extend actual possession constructively to the boundaries of a tract under either the 5 or 10 year statute is that it should be sufficient to give notice to the true owner of the point to which the holder of such deed is claiming. We think, also, in this connection, that the maxim that "That is certain which can be made certain" applies; and applying these rules to this particular case, in so far as the defendant in error claims title by limitation by the possession of Fornish and those holding for him, it is apparent that the true owner was notified that he claimed a tract of land commencing at the Marshall east line, running thence easterly between the northern lines of the league and the bayou far enough to include 400 acres. It is apparent that the Marshall east line was well defined, marked and located on the ground. The ascertainment of the exact limits which Fornish and those holding for him claimed was merely a matter of mathematical calculation. It may be said that the description is insufficient for the purpose indicated because the true owner would have to go on the ground; yet, if the description were by metes and bounds, commencing at a marked corner, he would have to go on the ground. Does it not follow that the description must be such as to give the true owner notice of what land is claimed, and that he can locate the same on the ground?

We therefore hold that the description was sufficient to constructively extend the possession of those holding for Fornish to the limits of the 400 acres.

What we have said disposes, we think, of assignments of error Nos. 1 to 19, 24 and 25, 49 to 61, and 70. The paragraph of the charge complained of in the twenty-third assignment of error is, we think, under all the testimony, harmless error.

Of the remaining assignments, of which there are 77 in all, many of them are insufficiently briefed, and most of them attack defendant in error's record title. They are all overruled without further discussion.

The twenty-sixth assignment of error is overruled on the authority of Merriman v. Blalack, 121 S. W. 553.

Therefore, having found no error reasonably calculated to have induced the wrong result below, the case is affirmed.

## On Motion for Rehearing.

On motion for rehearing plaintiffs in error ask us to file additional conclusions of fact as to their limitation title based on excerpts from the testimony of certain witnesses, Graves and others.

In their brief this question was raised by the sixth, seventh, eight, and ninth assignments of error. There is only one statement

under any of these assignments, and it is placed under the sixth assignment of error and referred to under the other assignments. That statement as to possession was literally as follows: "Settegast purchased 617½ acres from Long and others, by deed recorded in June, 1900, · which tract included the 240 acres in this suit. St. 203. Settegast went into immediate possession (St. 156), and paid all taxes on the 617½ acres each year as the taxes accrued (St. 154). The possession of Settegast continued uninterruptedly until he sold to Marks in September, 1907 (St. 155), he having a tenant residing and in charge of the 617½-acre tract all the time. Stock was pastured on this land within · the fence which inclosed the entire tract (St. 158), and Settegast operated a sawmill there and manufactured lumber from timber cut from all parts of the land (St. 161). There was a clear period from June, 1900, to September, 1907, when Settegast had actual possession of this land, with its use, under a duly recorded deed (St. 204), coupled with the payment by him of all taxes. Appellants requested a peremptory instruction (Tr. 61), which was refused; and the refusal was assigned as error."

It will be noted that the testimony presented in the brief is referred to therein as being on pages 154, 155, 156, 161, 203, and 204. The statement of testimony now presented, upon which we are asked to find conclusions of fact, is contained on pages 154, 156, 161 (that far it has hereinbefore been presented and fully passed upon), and reference is now made to additional testimony contained on pages 66, 67, 76, 77, 103, 136, 137, 99, 100, 102, 110, 111, 113, 117, 119, 128.

[6] It is apparent, therefore, that the statement presented in the brief, which was the only reference to the defendants' testimony supporting their limitation title, was defective in that it was not a statement made up from all that was in the record. It is also defective, we think, in that it does not set out the testimony of the witnesses, but sets out counsel's conclusions from said testimony.

[7] In a record as large as the one in this case, with issues as complicated as we find in this case, the appellate court must of necessity rely upon counsel for, at least, a reference to the place in the record where all the testimony may be found upon which they rely to support the propositions which they submit. The effect of the defective statement was to present a proposition of law supported by certain facts out of all the facts in a very large record. Having based our opinion on said facts so presented, and on such additional facts as we were able to find on the subject, we are now presented with facts never before mentioned as being relied on in support of the propositions advanced, and asked to file additional conclusions of fact based on them. We believe we are well within the rules of law in declining to do this, the rule being that this court may, at its option, rely entirely upon the statement under any assignment for the facts on which it is based.

As it is now apparent that said statement was not made up of all that was in the record, we decline to consider the assignment and hold said assignment insufficient by reason of said defective statement to entitle it to consideration. In this connection, we also hold that the statement under the first assignment of error is insufficient to entitle it to consideration in that, referring to possession, it reads: "There was no evidence of possession at all except during the 70's by Poskey and Burton who lived on 50-acre tracts that had been given to the wife of each (St. 46–81)"—because the same is only a conclusion and does not set out the facts.

In their motion for rehearing plaintiffs in error also request many additional findings of fact to the effect that certain witnesses testified to certain facts. These we refuse, because, as we understand it, it is for us to find "conclusions" of fact, not the elemental facts making up the conclusions, and we have in the opinion concluded all material fact issues which were properly presented.

This case is a perfect illustration of the necessity of the enforcement of the rules regarding specific assignments of error, correct propositions and statements of fact made up of *all* that is in the record. If counsel neglect these rules and get results unsatisfactory to them, they should not therefore intimate in their motion for rehearing that the court has knowingly decided the case on something else than what they honestly believed the law to be.

The motion is accordingly overruled.