Eugene Harmon et al. v. Overton Refining Company et al.

No. 6934.   Decided October 20, 1937.
Rehearing overruled December 8, 1937.
(109 S. W., 2d Series, 457; 110 S. W., 2d Series, 555.)

*Phillips, Trammel, Chizum, Estes & Edwards,* of Fort Worth and Tyler, *Greenwood, Moody & Robertson,* of Austin, and *Smith & West,* of Henderson, for plaintiffs in error.

Where the pleadings and the evidence amply support the answer of the jury to special issues and the judgment of the court, leaving in plaintiffs in error an unquestionable title to an undivided one-half interest in the land in controversy, it was the duty of the court to affirm the judgment of the trial court in favor of plaintiffs in error for an undivided one-half interest, although the Court of Civil Appeals was of the opinion that the case should be remanded for a new trial on the issue of limitation, such latter issue being separate and distinct from the former. Murrell v. Wright, 15 S. W. 156; Long v. McCoy, 294 S. W. 633, 15 S. W. (2d) 234; 3 Tex. Jur. 1150; Thomas v. Quarrels, 64 Texas 491; Guffey v. Smith, 237 U. S. 101, 59 L. Ed. 856.

The trial court having instructed the jury on the issue of limitation, in which it defined the term "adverse possession," etc., it was error to refuse to submit to the jury the additional issue requiring the jury to determine whether or not J. M. Cohagen claimed the particular tract of land in controversy when he entered upon and during his possession of the land sold

to him by H. C. Maxwell. Texas Power & Light Co. v. Culwell, 34 S. W. (2d) 820; Hardy v. Bumpstead, 18 S. W. (2d) 821, 41 S. W. (2d) 226; Powell v. Messer, 18 Texas 401.

*A. A. Garrett* and *F. W. Fischer,* of Tyler, for defendant in error.

In response to the above propositions, cited Holland v. Nimitz, 111 Texas 419, 239 S. W. 185; Harris County v. Charlton, 111 Texas 588, 243 S. W. 460; Panhandle Construction Co. v. Lindsey, 123 Texas 613, 72 S. W. (2d) 1068; Chapman v. Crichet, 127 Texas 590, 95 S. W. (2d) 360.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Prior to November 5, 1918, H. C. Maxwell and wife, Arie Maxwell, were owners of four tracts of land in Rusk County, Texas. One tract contained 108 acres and is designated on the accompanying plat by the letter D. One contained 102 acres and is designated on the plat E. One contained approximately 10 acres, was known as the Pruitt tract, and is represented on the plat by the letters A, B and C. The other contained one acre, known as the Bolt lot, and is designated F. Maxwell and wife resided upon tract E and had the entire acreage under one fence, as indicated by the dotted line on the plat. The Pruitt tract was bounded on the east by the London-Overton public road. A man by the name of Thrash owned the tract designated H, which extended a few feet across the road at its southwest corner, and a small portion of same was included within the Maxwell fence. The plat in question is only approximately correct and is used for illustrative purposes only. It is as follows:

On the date mentioned Maxwell and wife sold to J. M. Cohagen a part of the Pruitt tract. This was sold at a price of $50.00 per acre. In order to ascertain the exact acreage to be conveyed and included in the deed a survey was made. The part sold is designated B on the accompanying plat. In making the survey the surveyor began at the northwest corner of the Bolt lot, at the point designated 14, and by various calls reached a point in the public road indicated by the figure 6. He then followed the center of the road by various calls until he reached the west line of the Thrash tract (H). He then ran due south 52 varas to intersection with the north line of the Bolt lot at the point 16, and then ran west to the beginning. The land within these boundaries amounted to 9.29 acres. At $50.00 per acre the purchase price amounted to $464.50. On November 5, 1918, Maxwell and wife executed a general warranty deed to Cohagen reciting a cash consideration of $464.50, conveying the 9.29 acres by specific metes and bounds. After this conveyance there was left of the Pruitt tract the small triangular lot designated C and the small triangular lot desigated A. This last lot contained about 26/100 of an acre, and lay between the east line of the 9.29 acres as actually surveyed and the Maxwell fence along the west side of the public road. This lot A is the land in controversy. Its location with reference to the 9.29 acres and the

actual contour of the 9.29 acres are more accurately shown by plat accompanying the opinion of the Court of Civil Appeals. This opinion is reported in 81 S. W. (2d) 207.

On the same day that Maxwell and wife executed the deed to Cohagen they executed a deed to I. R. Thrash conveying the Bolt lot. In February, 1919, Thrash conveyed this lot to J. M. Cohagen. Immediately after purchasing the 9.29 acre tract Cohagen built a residence on same and moved into it with his family. The record is silent as to how much of the 9.29 acres was put in cultivation, but indicates that some part of the land around the residence was cultivated. There was a garden on the Bolt lot and this was cultivated by Cohagen and others for him. No part of the land in controversy was put in cultivation, and the only use made of it was for pasturage in connection with the 9.29 acres. Just how often and for what length of time cattle grazed upon this particular lot is not shown. Sometime after Cohagen built his residence and moved upon the 9.29 acres, he and Maxwell built a joint fence from the southwest corner of the Bolt lot to the point where the line of the 9.29 acres intersected the Maxwell fence near the public road; such joint fence running from point 17 to point 6 on the plat. Maxwell's fence along the west line of the public road remained as it had been prior to the sale to Cohagen until it went down sometime in 1928 or 1929.

On July 19, 1927, Cohagen and wife conveyed the 9.29 acres to Eugene W. Harmon by general warranty deed, the description being by metes and bounds exactly as in the deed by Maxwell to Cohagen. This deed also contained a description of the Bolt lot by metes and bounds. There is absolutely nothing in the deed to indicate a purpose to convey the claim, if any ,of Cohagen to the lot in controversy, nor does the evidence show with any degree of certainty that there was a definite and specific *contract* to convey a claim to the tract in addition to the 9.29 acres. After the deed to Harmon he moved into the house on the 9.29 acres and continued to use the land as Cohagen had done.

On November 27, 1929, Harmon and wife conveyed the 9.29 acres and the Bolt lot to J. L. Maxwell, both tracts being described by specific metes and bounds as in the previous deeds. In this conveyance Harmon reserved a one-half interest in the minerals.

Mrs. Arie Maxwell, wife of H. C. Maxwell, died November 13, 1918. It seems to be undisputed that all of the tracts of land above mentioned remaining after the sale of the Bolt lot and the 9.29 acres were community property.

On September 29, 1930, H. C. Maxwell and the children and heirs of his deceased wife entered into a partition agreement, by the terms of which Maxwell conveyed to the heirs tract D of 108 acres. In turn the heirs on May 21, 1931, executed to Maxwell a deed conveying tract E of 102 acres, and in addition "all of the unsold portion" of the Pruitt tract. According to the literal terms of this deed it included tract C of approximately 3 acres and lot A, the land in controversy. A further statement concerning this partition will be hereinafter set out.

Prior to April 4, 1932, by agreement with H. C. Maxwell, Leadell Pool and husband built a house on lot A and took up their residence thereon. Leadell Pool is a daughter of J. L. Maxwell, to whom Harmon and wife conveyed the 9.29 acres on November 27, 1929. J. L. Maxwell was a brother of H. C. Maxwell. So far as the record discloses J. L. Maxwell does not claim to have acquired any interest in the land in controversy by reason of the deed from Harmon to himself of date April 4, 1932. On April 4, 1932, H. C. Maxwell executed a general warranty deed to Leadell Pool conveying the lot in controversy.

On April 7, 1932, the heirs of Mrs. Maxwell filed suit in the district court of Rusk County against H. C. Maxwell and others holding under him to set aside and annul the partition agreement evidenced by the deeds of September 29, 1930, and May 21, 1931. This suit was entitled Walter Maxwell et al. v. H. C. Maxwell, Sr., et al., and will hereinafter be referred to as Cause No. 9199. In their pleadings in that case plaintiffs asserted that by reason of mistake H. C. Maxwell received a larger proportion of the common lands than he was entitled to receive, and they received a lesser amount than their real interest; and that the land here in controversy, while included in the description "all the unsold portion" of the Pruitt tract, was not in reality included, because none of the parties knew of its existence as a part of the common estate. At the time of the trial of the present case that suit was still pending, and in printed argument filed in this Court it is stated that it is still pending.

After the conveyance by H. C. Maxwell to Leadell Pool, she and her husband executed an oil and gas lease upon the land in controversy, which passed regularly to other defendants in error here, and an oil producing well was brought in on said lot. This resulted in the present litigation.

The instant suit was commenced by Eugene Harmon and wife alone against defendants in error, Leadell Pool and husband and those holding under them. Harmon sued for an undivided one-half interest in the oil, gas and minerals, proceeding upon

the theory that the land in controversy was a part of the 9.29 acres, and that he had reserved such mineral interest when he conveyed the 9.29 acres to J. L. Maxwell. Later Harmon amended his petition, making H. C. Maxwell and his children parties, and in this amended petition claimed the entire lot in controversy, and not merely an undivided one-half interest in the minerals therein. This was upon the theory that he had acquired title to this lot of land by limitation, and that it was not included in his conveyance to J. L. Maxwell. Thereafter the controversy between Harmon and the Maxwell heirs was severed, and an agreed judgment was entered as to them. The heirs then joined Harmon as plaintiffs against H. C. Maxwell and the defendants in error, it being agreed that Harmon would receive three-fourths of any recovery and the heirs one-fourth of such recovery. As the cause then stood the claim asserted by Harmon was based upon limitation, while the claim asserted on behalf of the heirs was to an undivided one-half interest, on the theory that they had inherited that interest from their mother, and it was not included in the partition deed by themselves to H. C. Maxwell. As H. C. Maxwell had conveyed the land to defendant in error Leadell Pool, he disclaimed in open court, and on April 7, 1933, was dismissed from the suit. However, this was done without prejudice to his rights in Cause No. 9199 heretofore mentioned. On January 21, 1934, and after H. C. Maxwell had been dismissed from the suit, plaintiffs in error filed their third amended petition and sought to cancel and annul the deed of May 21, 1931, in so far as the land in controversy was concerned. This appears to have been on the theory that this tract was not included within the general description of the "unsold portion" of the Pruitt tract; because, as alleged, none of the parties knew of its existence as a part of the community property. It will be observed that this is in substance the identical allegation made with reference to this tract in the prior suit No. 9199.

The trial of this case in the district court resulted in a finding by the jury that Harmon and those under whom he claimed had held peaceable and adverse possession of the lot in controversy for more than ten years, and in a further finding that the lot in controversy had been included in the deed by the Maxwell heirs to H. C. Maxwell of date May 21, 1931, by mutual mistake. Upon such findings the trial court rendered judgment for Harmon and the Maxwell heirs for all of the land in controversy, including all oil produced therefrom, or its value, and all personal property of every kind situated upon said land. The judgment of the trial court was reversed and remanded by the Court of Civil Appeals for various reasons. 81 S. W. (2d) 207.

Disregarding for the present all other questions, we think it evident that the evidence in this case did not raise an issue of fact as to adverse possession of the land in controversy under the ten years statute. It is not contended that the land in controversy was a part of the 9.29 acres as described in the deed by Maxwell to Cohagen, and there was no attempt to reform the deed on theory that this land had been included within the purchase and was omitted from the deed by reason of mistake, or otherwise. The sole question in this regard is whether or not Cohagen and Harmon together had such possession of the lot in question as would give title by limitation under the ten years statute.

■ It is well settled that when one enters into possession of land under a deed his possession is referable to the deed, and is presumed to be in conformity with it, and is confined to the limits thereof. Therefore, in order for a vendee to acquire title by adverse possession of additional or adjoining land outside the limits of the boundaries in his conveyance, he must have actual possession of such additional land of such character as of itself will give notice of an exclusive adverse possession and mature into title after the statutory period. Carley v. Parton, 75 Texas 98, 102, 12 S. W. 950; Ennis v. Billingsley, 294 Ky. 254, 94 S. W. (2d) 669; Bird v. McHargue, 182 Ky. 27, 205 S. W. 957; Frazier v. Ison, 161 Ky. 379, 170 S. W. 977; 2 Corpus Juris Secundum, Adverse Possession, sub. b, Sec. 185.

■ In this instance there was not such possession. Cohagen went into possession under his deed and every act of visible appropriation and ownership was upon the 9.29 acres, and was referable to his deed. The tract in controversy was not fenced or visibly occupied, and the only use made of same was an occasional grazing of cattle which strayed thereon while grazing upon the 9.29 acres. The fact that Maxwell's fence remained along the eastern boundary of this small tract, and Maxwell joined with Cohagen in building a joint fence along the west boundary of the 9.29 acres, while having the effect of placing the land in controversy within an inclosure, did not constitute an open and adverse appropriation of this lot by Cohagen. To hold that it did would in effect be saying that Maxwell was assisting Cohagen to defeat his own title.

■■ Writ of error was granted in this case on assignments of error raising the proposition that although plaintiffs in error may not have shown title to the lot in question by limitation, they nevertheless showed title to a one-half interest therein by inheritance through Mrs. Arie Maxwell, and judgment for them

to that extent should have been affirmed. From the foregoing statement, however, it becomes apparent that before plaintiffs in error could recover a one-half interest on this theory it was necessary to annul or reform the partition deed of May 21, 1918, wherein the heirs conveyed the lot in controversy to H. C. Maxwell, the same being undoubtedly included within the description of "all the unsold portion" of the Pruitt tract. In the present suit they sought to reform this deed by merely obtaining a finding that the lot in question was included in that deed by mutual mistake. The allegations raising this contention were put into the petition, over objections by defendants in error, after H. C. Maxwell had been dismissed from the suit. It would appear to be obvious that as H. C. Maxwell had conveyed the lot in question by general warranty deed, in light of other considerations hereinafter mentioned, he was a necessary party to a reformation of the deed. Long before this issue was brought into the case the Maxwell heirs had sued H. C. Maxwell and those holding under him to cancel and annul the deed of May 21, 1931, in its entirety. That suit involved a contention that the partition was void as to tracts D and E and also as to the lot in controversy, the contention with reference to this lot being it was not really included in the deed because the parties did not know of its existence as a part of the community estate. It is evident that the parties were under the impression that they were dividing the entire community property. It therefore necessarily follows that failure to include the lot in controversy (if in fact it was not included) would furnish a ground for all the parties to say that they would not have executed the partition deeds if they had known the true facts. In fact, some of the plaintiffs actually testified that if they had known that this lot was included in their deed to Maxwell they would not have executed same. It is obvious, therefore, that the court was not authorized in this proceeding to reform the deed by a holding that it did not include the lot in controversy, leaving it binding as to the other tracts. The question as to whether or not this should be done should have been litigated in suit No. 9199, and determined in connection with the question as to whether or not the partition in all other respects was just and equitable. Besides, if the whole partition agreement was void, as alleged by plaintiffs in error in suit No. 9199, then it is obvious that H. C. Maxwell continued to own an undivided one-half interest in all the lands, and his vendees would have a right to try the question of whether or not there should be set aside to them the lot in question upon an equitable partition of the whole. That question will not arise until it is shown that the partition was void,

and naturally it should be determined in the suit first filed, wherein all questions concerning the validity of the partition agreement are involved.

It follows, therefore, that as plaintiffs in error can not recover upon the title inherited through Mrs. Maxwell until the deed of May 21, 1931, has been set aside or reformed, and as that matter should be litigated in suit No. 9199, and as plaintiffs in error showed no title by limitation, they can not recover in this action.

Judgments of the Court of Civil Appeals and of the district court are hereby reversed and judgment is here rendered in favor of defendants in error, without prejudice however to the right of plaintiffs in error to bring all necessary parties into Cause No. 9199 and there litigate all questions pertaining to the partition agreement and their right to recover a one-half interest by reason of title through Mrs. Maxwell.

Opinion adopted by the Supreme Court October 20, 1937.

### ON MOTION FOR REHEARING.

■ In original opinion we reversed in part the judgment of the trial court and of the Court of Civil Appeals and rendered judgment for defendants in error. We also reversed said judgments in part with instructions that the cause be dismissed. In this respect we have concluded there was error. The Court of Civil Appeals reversed and remanded the cause in toto for a new trial. Defendants in error did not prosecute writ of error complaining of the action of the Court of Civil Appeals in remanding the cause. While the action of the Court of Civil Appeals was favorable to them upon the questions discussed and they were not required to prosecute writ of error in that regard, yet the judgment remanding the cause, instead of reversing and rendering same, was against them; and if dissatisfied with the judgment in that regard they should have made application for writ of error. Howard v. Commonwealth Building & Loan Association, 127 Texas 365, 94 S. W. (2d) 144. This Court did consider their various propositions urged in the Court of Civil Appeals, but without an application for writ of error did not have jurisdiction to disturb the judgment remanding the cause.

The judgment heretofore rendered is therefore set aside, and the judgment of the Court of Civil Appeals reversing and remanding the cause is affirmed. We remark, however, that as shown by the original opinion, the trial court should have sustained the demurrers to that part of the petition seeking to set

aside the deed of May 21, 1931, and should have instructed verdict in favor of defendants in error on the question of adverse possession.

In all other respects the motion for rehearing by plaintiffs in error is overruled.

Opinion adopted by the Supreme Court December 8, 1937.