Helen V. WELCH, Appellant,

v.

J.P. MATHEWS, et al., Appellees.

No. 1548.

Court of Appeals of Texas, Tyler.

Nov. 4, 1982.

John Gilliland, Burke & Gilliland, Dallas, Bill Warren, Center, for appellant.

James Cornelius, Jr., Zeleskey, Cornelius, Rogers, Hallmark & Hicks, Lufkin, for appellees.

SUMMERS, Chief Justice.

This is an appeal from a trespass to try title suit brought by plaintiff/appellant Mrs. Helen V. Welch (Welch) against defendants/appellees J.P. Mathews, et al. (Mathews), seeking clear title to 64 acres of land located in San Augustine County, Texas. The case was tried before a jury. At the close of the evidence, the court granted defendants' motion for an instructed verdict with respect to Article 5519a[1] and de-

---

1. This and all other statutory references are to Tex.Rev.Civ.Stat.Ann. unless otherwise noted.

Although frequently referred to as a 25 year

nied it with respect to the 10-year statute of limitations, Article 5510. The jury found against Welch on her claim under the ten-year statute, and the trial court rendered judgment upon the jury's verdict against her. From this adverse judgment, Welch has prosecuted this appeal.

We affirm.

The essential facts leading up to the lawsuit are undisputed. In 1923, I.L. Mathews conveyed the 64 acres in the James Moss Survey to W. Davis by a warranty deed. In 1926, I.L. Mathews delivered a deed of trust on 707 acres of land to E.D. Downs, as trustee for E. Fite to secure a loan of $4,000.00. The 707 acres included 100 acres of the James Moss Survey but not the 64 acres in controversy herein. In 1927, W. Davis conveyed the 64 acres back to I.L. Mathews. In 1934, Amanda Mathews conveyed the 707 acres, including the 100 acres, to E. Fite pursuant to an administratrix's deed in cancellation of the $4,000.00 indebtedness. Welch asserts her claim to the 64 acres under Fite.

The Mathews family initiated a lawsuit against Fite in 1954 to adjudicate title to the 64 acres, but the suit was later dismissed for want of prosecution. No one in the Mathews family ever used or paid taxes on said property after the 1934 deed. Mrs. Helen Welch, granddaughter of E. Fite testified that cattle were run on all of the 164 acres and that the 100 acres and 64 acres were used as a single tract. Gene Welch, husband of appellant, testified that since 1947 he and his wife had visited the 164 acres at least once a year, checking the fences, cows and timber thereon. Welch sold timber from the acreage to Charles Watson in 1973 or 1974. In 1975, Watson purchased the 100 acres. Welch agreed that Watson could graze cattle on the 64 acres if he would maintain the fences.

Watson testified that there was no fence dividing the 64 acres from the 100 acres and that he treated the 164 acres as one piece of property. Bud Youngblood, who surveyed the 64 acres in 1978, testified that there was only a partial fence between the 64 acres and the 100 acres and that the 64 acres was not enclosed by a fence capable of turning cattle.

At trial a stipulation was effected between appellant and appellees regarding the payment of taxes on the subject property. The parties stipulated, based on the San Augustine County tax certificate, that county taxes on the 164 acres were paid timely by E. Fite for the years 1951 through 1955, by Mrs. E. Fite for the years 1956 through 1972, by Mrs. E. Fite in care of Helen Welch for the years 1973 through 1974, and by Helen Welch for the year 1975; that taxes on the 64 acres were paid timely by Helen Welch for the years 1976 through 1979.[2] The parties further stipulated, in accordance with the San Augustine Independent School District tax certificate, that the school taxes were paid timely as follows: on an 85 acre tract in the James Moss Survey by E. Fite for the year 1952; on an 85 acre tract and a 45 acre tract by E. Fite for the years 1953 through 1955; and on the 164 acres by Mrs. E. Fite for the years 1956 through 1972, by Mrs. E. Fite care of Helen Welch for the years 1973 through 1975, and on 64 acres by Helen Welch for the years 1976 through 1979.[2]

In her first point of error, appellant asserts that the trial court erred in granting appellee's motion for an instructed verdict as to Article 5519a. Appellant contends that the evidence established as a matter of law the requisite elements necessary to constitute a prima facie case and allow the passing of title to claimant under Article 5519a.[3] We disagree.

statute of limitations, this is a statute creating prima facie evidence of title.

2. The stipulation also recited that both county and school taxes for the year 1979 were paid after the instant case was filed.

3. The statute provides in pertinent part:

In all suits involving the title to land not claimed by the State, if it be shown that those holding the apparent record title thereto have not exercised dominion over such land or have not paid taxes thereon, one or more years during the period of twenty-five years next preceding the filing of such suit and during such period the opposing parties

It is the final requirement of the statute, namely, the payment of taxes that we are concerned with in this point. The stipulations adduced at trial established that county taxes were paid on time by appellant or her grandparents for over twenty-five years, and the school district taxes were paid on time by appellant or her grandparents for a period of twenty-three years. Appellant admits in her brief to the court that the only issue is whether the school district taxes were paid timely for the two additional years of 1954 and 1955.

Appellant cites the case of *Stephens v. House,* 257 S.W. 585, 592 (Tex.Civ.App.—Galveston 1923, writ dism'd w.o.j.), wherein the only evidence introduced as to payment of taxes was the delinquent tax records showing that the land was never listed for delinquent taxes. That court held that the reasonable inference was that the taxes were paid when due. Appellant asserts that a similar inference can be made in the case at bar, and argues that the fact that the appellees had never paid taxes since 1934 was sufficient for an inference of timely payment of school taxes for at least twenty-five years by appellant or her grandparents. Since no delinquent school tax records were introduced into evidence in the instant case, it is clearly distinguishable from *Stephens.*

The record conclusively reflects that the school taxes were paid for only twenty-three years. The case of *Pagel v. Pumphrey,* 204 S.W.2d 58 (Tex.Civ.App.—San Antonio 1947, writ ref'd n.r.e.), stands for the proposition that a claim under Article 5519a is not established where appellants fail to show payment of taxes thereon annually before becoming delinquent for as many as twenty-five years next preceding the filing of such suit. The stipulation and the corrected tax certificate which were allowed into evidence do not constitute conclusive proof of the payment of the school district taxes on the 64 acres for twenty-

five years by appellant or her grandparents. The school district tax certificate as corrected showed that taxes for the years in question, 1954 and 1955, were paid by E. Fite for an 85 acre and a 45 acre tract. We cannot construe this to imply payment on the 64 acres. In *Pinchback v. Hockless,* 137 S.W.2d 864 (Tex.Civ.App.—Beaumont 1940), rev'd on other grounds 138 Tex. 306, 158 S.W.2d 997 (1942), the defendants adduced evidence showing they had rendered and paid taxes on 416 acres located in the same league as the land in controversy (which was 5 acres out of a tract referred to as the "Bright ten acres"). On the record in that case, there was no proof of payment of taxes on the Bright ten acres. The court stated at page 868:

The burden of proof was on defendants to establish every essential fact entitling them to recover, including definite proof that the taxes were seasonably paid on the very land involved. This they did not do. It cannot be inferred from the mere fact that they paid taxes on 416 acres of the C. Williams League that the Cunninghams meant to include and pay taxes on the Bright ten acres.

... In the first place, presumption naturally would be that they meant to pay taxes, and did pay taxes on their own land since they did not render any excess acreage.

■ Thus, under *Pinchback,* the presumption would be that Mr. Fite was paying school taxes on his own acreage in 1954 and 1955, and at that time he had a deed on record to a 100 acre tract and a 125 acre tract in the Moss Survey. It is well settled that payment of taxes on another tract of land cannot mature limitation title on the land in controversy. *Hermann Hospital Estate v. Nachant,* 55 S.W.2d 505 (Tex. Comm'n App.1932, holding approved); *Conn v. Houston Oil Co. of Texas,* 218 S.W. 137 (Tex.Civ.App.—Beaumont 1920, no writ).

and those whose estate they own are shown to have openly exercised dominion over and asserted claim to same and have paid taxes thereon annually before becoming delinquent for as many as twenty-five years during such

period, such facts shall constitute prima facie proof that the title thereto had passed to such persons so exercising dominion over, claiming and paying taxes thereon.

In determining whether appellee Mathews was entitled to an instructed verdict as to Article 5519a, we must view the evidence in the light most favorable to appellant Welch, the losing party; we must indulge against the instruction every inference that may properly be drawn from the evidence; and, if the record reflects any testimony of probative value in favor of the losing party, we must hold the instruction improper. A peremptory instruction is warranted only when the evidence is such that no other verdict can be rendered and the winning party is entitled to judgment as a matter of law. *White v. White,* 141 Tex. 328, 172 S.W.2d 295, 296 (1943); *Santos v. Guerra,* 570 S.W.2d 437, 438 (Tex.Civ. App.—San Antonio 1978, writ ref'd n.r.e.); *Lee v. Chumley Lumber Company,* 465 S.W.2d 414, 416–17 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.).

When, under the evidence produced at trial before the jury, a party is entitled to a verdict as a matter of law, the court, on its own motion or that of a party, may instruct the jury as to the verdict it must return or may withdraw the case from the jury and render judgment. 3 McDonald, Texas Civil Practice, § 11.25 at p. 226 (1970).

Viewing the evidence in the light most favorable to appellant's case as stated above, we conclude appellant has failed to establish that school district taxes were paid on the land in controversy for the requisite 25 year period prior to the filing of this suit. Appellant's first point of error is overruled.

In appellant's second point of error she asserts that the trial court erred in overruling her objection to the submission of the instruction on adverse possession under a deed because there was no evidence to support submission of such instruction. The instruction was as follows:

You are instructed that when one enters into possession of land under a deed his possession is referable to the deed, and is presumed to be in conformity with it, and is confined to the limits thereof. Therefore, in order for a vendee to acquire title by adverse possession of additional or adjoining land outside the limits of the boundaries in his conveyance, he must have actual possession of such additional land of such character as itself will give notice of an exclusive adverse possession and mature into title after the statutory period.

The evidence adduced at trial reflected that the 64 acre tract was generally not distinguished from the 100 acre tract (which was at one time undisputedly owned by appellant and her predecessors). Testimony of several witnesses, including Welch demonstrated that their testimony related to the entire 164 acres and not specifically to the 64 acres.

The courts have repeatedly taken the stance that when one enters into possession of land under a deed his possession is referable to the deed and in order to acquire title by adverse possession of additional or adjoining land outside the boundaries of his conveyance, he must have actual possession of such additional land of such character as will give notice of adverse possession and mature into title after the statutory period. *Harmon v. Overton Refining Co.,* 130 Tex. 365, 109 S.W.2d 457, 110 S.W.2d 555 (Comm'n App.1937, judg. adopted); *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954).

We believe that the instruction was properly given to the jury to enable them to render a verdict on the issue submitted under the facts adduced in this case. The evidence showed that appellant and her predecessors claimed to have had possession and use of land embraced in their deed, as well as land not embraced in their deed. The jury needed to be advised that the evidence of use only of land described in their deed, or evidence which might be referable to their deed, would not be sufficient to establish adverse possession of the tract which was outside their deed. Appellant's second point of error is overruled.

In appellant's third and final point of error Welch asserts that the jury erred in finding against appellant on Special Issue

**834**

No. 1 because such finding was against the great weight and preponderance of the evidence. In Issue No. 1 the jury found that appellant, and those under whom she claims, did not hold exclusive, peaceable, and adverse possession of the land in controversy, continuously cultivating, using, or enjoying the same, for a period of ten or more consecutive years before February 21, 1980.

■■■■ Appellant argues that Welch and her predecessors had exclusive, peaceable and adverse possession of the 64 acres. However, the record fails to reflect proof of continuous use of the land by Welch or her predecessors. Welch and her husband resided in Dallas and their visits were infrequent. The evidence adduced at trial indicates that occasional grazing was the main use of the land. Where land is used by the adverse claimant merely for grazing purposes, to support a title by limitation, it must be shown that the tract was enclosed. *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954). The record shows that there was not a fence capable of turning cattle enclosing the 64 acre tract. Further, in the instant case the record does *not disclose how often cattle may have been* on the land in controversy. This court in *DeArman v. Surls,* 618 S.W.2d 88, 91 (Tex. Civ.App.—Tyler 1981, writ ref'd n.r.e.), held that where land has been casually enclosed such is not a sufficient appropriation to assert an adverse claim. In order to establish title to land by virtue of the statutes of limitation one must meet the burden of proof, which must be clear, unequivocal and satisfactory. See *Orsborn v. Deep Rock Oil Corp., supra,* and *Pinchback v. Hockless, supra.*

After a review of all the evidence in the record, both that in favor of and against the jury's finding and the judgment based thereon, we are unable to agree with appellant's contention under this point that the jury's finding in answer to Special Issue No. 1 is so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant's third point is accordingly overruled.

The judgment of the trial court is affirmed.