ACCEPTED
03-14-00731-CV
4943224
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/20/2015 12:00:00 AM
JEFFREY D. KYLE
CLERK

## CAUSE NO. 03-14-00731-CV

### IN THE COURT OF APPEALS
### THIRD DISTRICT OF TEXAS
### AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/20/2015 12:00:00 AM
JEFFREY D. KYLE
Clerk

_____

### JUANA MENDEZ VALDEZ
### ET VIR JUAN VALDEZ
APPELLANTS,

VS.

### MELODY MUELLER MOERBE
APPELLEE,

_____

### APPELLANT'S REPLY BRIEF

_____

**O. F. JONES III**
**ATTORNEY AT LAW**
**109 W. SANTA ROSA**
**P. O. DRAWER E**
**VICTORIA, TEXAS 77902**
**361-573-6381 (Phone)**
**361-576-4607 (Fax)**
**OFJones360@gmail.com**
**State Bar No. 10974000**

**ATTORNEY FOR APPELLANT**

1

# TABLE OF CONTENTS

PAGE

REPLY ARGUMENT (Paragraphs 1 through 15)................................ 6

PRAYER ..................................................................... 20

CERTIFICATE OF SERVICE ............................................. 21

# LIST OF AUTHORITIES

**Case**                                                                                  **Page(s)**

*Brohlin v. McMinn*, 341 S. W. 2d 420, ( Tex. 1960) ............................................ 13, 16

*Christi v. Brewer*, 374 S. W. 2d 908, 914 (Tex. Civ.
     App. - Austin, 1964, wr. ref. n. r. e.); ...................................................... 8

*Coleman v. Waddell*, 151 Tex. 337, 249 S. W. 2d 912 (Texas 1952) ................... *17*

*Davis v. Howe*, 213 S. W. 609 (Commission of Appeals 1919). .......................... 13, 16,

*De Alonzo v. Solis*, 709 S. W. 2d 690, (Tex. App. -San
     Antonio, 1986, wr. ref. n. r. e) .................................................................... 17

*Dickson v. Dickson*, 993 S. W. 2d 735 (Tex. App. - Houston
     [14th Dist.] 1999. ........................................................................................ 17

*Doyle v. Ellis*, 549 S. W. 2d 62 (Tex. Civ. App. - Waco, 1977) .......................... 17

*Dreihs v. State*, 301 S. W. 2d 123, (Tex. Ct. Crim, App. 1957) ........................... 8

*Davidson v. Great National Life Insurance Company*,
     737 S. W. 2d 312, 314 (Tex. 1987) ............................................................ 8

*Harmon v. Overton Refining Co.*, 130 Tex. 365,
     109 S. W. 2d 457 (1937) ............................................................................ *18*

*Mortenson v. Trammell*, 604 S. W. 2d 269, 277, (Tex. Civ.
     App. - Corpus Christi, 1980, no wr. hist.); ............................................... *8*

*Padilla v. NCJ Dev., Inc*. 218 S. W. 3d 811, 815, (Tex.
     App. - El Paso, 2007, pet dism). ............................................................... *6,7*

*Spiritas v. Robinowitz*, 544 S. W. 2d 710, 721, (Tex.
     Civ. App. - Dallas , 1976, wr. ref. n. r. e.); .............................................. 8

*Statham v. City of Tyler*, 257 S. w. 2d 742, 745 (Tex. Civ.
     App. - Texarkana, 1953 n. r .e . .................................................................. 13

*Villalon v. Bank One*, 176 S. W. 3d 66, 70 (Tex. App. - Houston
[1st Dist.], 2004, pet den.) .................................................................... 6


Tex. Jur 3rd, Adverse Possession, §112, ............................................... 13

CAUSE NO. 03-14-00731-CV

IN THE COURT OF APPEALS
THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

_____

JUANA MENDEZ VALDEZ
ET VIR JUAN VALDEZ

APPELLANTS,

VS.

MELODY MUELLER MOERBE

APPELLEE,

_____

**APPELLANT'S  REPLY  BRIEF**
_____

TO THE HONORABLE JUDGES OF SAID COURT:

Appellants **JUANA MENDEZ VALDEZ ET VIR JUAN VALDEZ** present herewith their Appellant's Reply Brief.

This Reply Brief is mainly intended to reply to the position and allegations of Appellee in her Brief.  Appellant has not repeated, and does not recite,  all of the authorities cited in their Appellant's Brief and its appendices, except where specifically pertinent to Appellee's allegations.  For the most part, we address Appellee's arguments in the order in which they are found in that Brief.

1.     As set forth in Appellant's Brief and the pleadings in the trial court, after Appellee filed a Forcible Entry and Detainer suit in the Justice Court in Fayette County, Appellants filed this suit in Trespass to Try Title, and for a Declaratory Judgment, to establish that they had perfected title to the property that they had been living on for fourteen years.   Because there was no landlord tenant relationship between the parties which would have given Appellee a basis to claim the right to immediate possession of the premises, the right to possession could only be determined by an inquiry as to who had the greater title to the property; as a result, the Forcible Entry and Detainer Suit was an invalid attempt to establish title in a "cheap' manner, and was in actuality no lawsuit to interrupt the time claim of Appellants  because the justice court had no jurisdiction. Thus, the plaintiff Appellants'  action was not time barred, and their title in fact established by the five year statute of limitations; they had already perfected title under the ten year statute when that justice court case was filed.

It may be important to particularly note that the two statutes of limitations involved, Texas Civil Practice and Remedies § Code 16.025 and §16.026 use the language " a person must bring suit . . . . to **recover** real property held in peaceable and adverse possession by another . . . ", thus presuming that possession has already been appropriated by the person so sued, to the extent that title has been gained thereby. On the other hand, Forcible Entry suits, as governed by §24.001 and§ 24.002 of the Texas Property Code, only deal with a person without a legal claim refusing to surrender possession, thus presuming that the person seeking eviction is the true owner.  Thus, the rationale of the cases cited previously that a suit in Forcible Entry and Detainer under either of these two Property Code sections cannot and does not invoke a title question so as to interrupt the claim of title of an adverse possessor, and if title is an issue, then the justice court has no jurisdiction over the controversy, and the case is a "nonentity".   See cases cited on page 33 of Appellant's Brief, particularly *Villalon v. Bank One*, 176 S. W. 3d 66, 70 (Tex. App. - Houston [1st Dist.], 2004, pet den.)  and  *Padilla v. NCJ*

6

*Dev., Inc.* 218 S. W. 3d 811, 815, (Tex. App. - El Paso, 2007, pet dism).

2.      In addition, on trial Appellants clearly established that they had occupied the premises for more than ten consecutive years, that they had met all of the elements to establish title based on the ten year statute of limitations, and now assert that the jury's answer to the Question regarding the ten year statute was clearly not only contrary to the undisputed great weight of the evidence, but that there was absolutely no evidence to support the jury's negative answer.

Counsel for Appellee rails at great length about how the Appellants testimony could be given no credence because it was not "clear, direct, positive, and with no issue of credibility".  Appellee completely ignores the fact that Appellant's testimony was completely clear, direct and positive with respect to each element of both statutes that had to be proven in order to establish adverse possession, and that it was also fully corroborated by the exhibits produced which reflected the date of their entry on the property when their utility services began, by the testimony of the surveyor Mr. Tim Hearitage, by the tax appraisal district tax records and by the testimony of the Chief Tax Appraiser.   Instead, he concentrated  his cross examination of Appellant Valdez on collateral immaterial issues, where he admittedly did mix her up, and on his own characterization of her testimony and acts as lies and fraud.

Mrs. Valdez is of Mexican descent.  She barely has any schooling or education.  She testified through an interpreter.  She speaks only broken English and has very little reading comprehension of English.  These facts apparently were considered by the jury, in addition to the rest of the evidence presented by counsel for both sides.  But counsel for Appellee has characterized her as a liar and a cheat, and guilty of fraudulent activity ( putting her in the position of being responsible for the legal acts of her then counsel, Mike Steinhauser) without any real justification for any of that, and counsel for Appellants believes that this was inappropriate on his part.

7

3.     It is singularly significant that nowhere in counsel for Appellee's argument does he ever  raise the issue or argue the evidence to support the defendant's burden to file suit to "recover" title to the property within a certain time frame.  (In point of fact, she has never done that.)   The entire thrust of the Appellee's appellate argument, which was also his theory and trial tactic, was to try to discredit the credibility of the Plaintiff Juana Mendez Valdez.   But  attempting to collaterally attack on non relevant side issues does not effect her credibility on the crucial issues, particularly when there is other supporting and corroborating evidence.  See  *Christi v.  Brewer*, 374 S. W. 2d 908, 914 (Tex. Civ. App. - Austin, 1964, wr. ref. n. r. e.);   *Spiritas v. Robinowitz*, 544 S. W. 2d 710, 721, (Tex. Civ. App. - Dallas , 1976, wr. ref. n. r. e.);   *Mortenson v. Trammell*, 604 S. W. 2d 269, 277, (Tex. Civ. App. - Corpus Christi, 1980, no wr. hist.); *Dreihs v. State*, 301 S. W. 2d 123, (Tex. Ct. Crim, App. 1957); see also *Davidson v.  Great National Life Insurance Company*, 737 S. W. 2d 312, 314 (Tex. 1987).

4.     The appellate standard of review in a case where the jury verdict is against the party with the burden of proof is to first determine whether there is any evidence to support the contrary verdict.   The appellate rule is that if there any evidence to support the verdict, then the appeal fails, because the Appellant has the appellate burden to establish the case as a matter of law.  Appellant submits that there is absolutely no evidence to establish that Appellee is entitled to a verdict or a judgment.  The record is very clear and the evidence is undisputed that Appellee did nothing at all to protect and preserve her claimed record title interest in the 0.92 are tract at issue.  The reason that Appellants had to clear the property from its heavy brush and trash cover which was on it when they first went on the property was because between 1992 and 2000, and in fact 2009, Appellee did nothing in the way of maintenance or  clearing.  In fact, Appellee's evidence is perhaps even more conflicting than Appellee claims Appellant's side to be; for example, Appellee's sole contention really is that she did not know where to look and

8

therefore was not aware that anyone was occupying "her" property until late 2009, when her husband for the first time spotted the Appellant's mobile home on the property, but the evidence is that Appellant had moved her mobile home on the property in 2000, and had paid water and sewer fees to the City of Flatonia in that year, ( as well as ad valorem taxes as assessed by the County Tax assessor); yet Appellee testified that she had listed the property for sale in 1995 with a Realtor, and then again in 2001 (after the Appellant's mobile home was already there) and after Appellants were in the process of clearing the heavy brush that covered that part of the property that they had not already cleared and located their mobile home upon. But to believe she never went on the property, never had any discussion with the realtor about is actual location on the ground, never considered its location next to the Interstate highway and the next door motel, and just paid the tax notices that were sent to her, is hardly credible, and if credible is proof of gross neglect. No wonder counsel for Appellee could not defend that position.

Appellee testified that her mother died in 1992 (RR. Vol 4, p. 20, l. 9) and that the responsibility for paying the taxes passed to her (RR Vol. 4, p. 22, l. 14). Her efforts to monitor the property, prior to 2009, according to her, was to look at where she thought the property was when she drove by on the way to a family reunion in Schulenberg. (RR Vol 4, p. 22, l. 23) She had the obligation not only to look, but to see. She said that she had a relative who had walked on the property with her uncle in 1998 (RR Vol 4, p. 22, l. 23). She said that in 2009, after her husband had seen the Valdez mobile home on the property and they went by and looked at it, that the "upper left hand corner" was still covered with brush and it was hard to tell where it was without a survey, (RR Vol 4, p. 27) but Mr. Hearitage had testified that it was already mostly cleared when he did his survey work in 2006 (RR Vol 3, p. 112, ls. 8 - 12) as did Mrs. Valdez; Mr. Hearitage also said that the buildings shown on his plat (Exhibit 6) on the Seeberger part of the property, which consisted of two mobile homes and two sheds, were there in 2006. It is very clear that Mrs. Moerbe did nothing to maintain, monitor or see after her property

9

from 1992 until at least 2009, and then, when put on notice, still did nothing until finally in March, 2012, she had her attorney employer file an ineffective suit in the Justice Court. She admitted that from 1992 until 2009 that she did nothing to physically inspect the property herself. (RR Vol 4, p. 36, l. 17) Appellant now suggests that the reason that was done, by people knowledgeable of the law, (RR Vol 4, p. 43) was that they already knew the ten year statute had run on them and that a suit in trespass to try title to "recover" the property would be defeated.

The 1.93 acre tract claimed by Appellant is shown on the Hearitage plat to be roughly 283' by 332', about the size of a football field. The Seeberger tract deed described it as 75 varas by 75 varas; the length of a vara has some controversy, but is generally considered to be about 2' 9", so this distance would have been roughly 206' square. It was not, and is not, a big tract. It could easily have been seen in its entirety from the car on Interstate 10, or from a car on Hackberry Street. See also the photographs in evidence, reflecting the current (at the time of trial) condition, which Appellant testified looked the same as it did after her husband had finished clearing out the front part where they put their home in 2000.

5. The evidence is clear, undisputed and Appellee's counsel did not ever even discuss the subject, that in 2006 Appellant desired to obtain city utility services from the City of Flatonia. She went to the city, and she was told that she had to have a survey. Not knowing what that was all about, she went to lawyer Mike Steinhauser, who had handled the real estate transaction when she bought the property from Mrs. Gordon, who in turn had bought the property from Mr. Steinhauser. Mr. Steinhauser arranged to get the property surveyed for her, by the surveyor Timothy Hearitage. So far, so good; no contest from Appellee or her counsel about this.

6. Problem arises. After Appellant told the surveyor where the property

10

was that she was claiming as hers, and the surveyor did his work, he told her that the deed that she had did not convey to her the property that she was claiming. Why did Appellant tell the surveyor where the property was that she was claiming? She says that it was because that was where Mrs. Gordon told her the four corners were that she was buying. Counsel for Appellee now lights in to Appellant and accuses her of lying. He says that Mrs. Gordon could not have told her that, because Mr. Steinhauser said that no one could know where the property was without a survey. But in fact, Appellant says, without dispute, that the property that she bought was the property that Mrs. Gordon had a "For Sale" sign on, and how else would Appellant have had any idea whatsoever where the property boundary lines were but for some representation by Mrs. Gordon. It makes no difference at all whether Mrs. Gordon was "brutally honest" or not, or whether she was really accurate or honest when she told Appellant what she was buying; Appellant understood and believed that she was buying the "four corners" and that was why she put her mobile home in that location. There is absolutely no other evidence to suggest that Appellant located there for any other reason. So all of Appellee's counsel's argument about whether Appellant was "lying" or not is a red herring; whether it did in fact persuade the jury or not is not relevant, although apparently it may have. His presumption that Mrs. Gordon could not have told Appellant the location has no basis in fact, and is purely speculative, and the entire premise was collateral and not relevant. See cases cited above, p. 4.

7.     Appellee attempted to attack Appellant's credibility on other issues as well, but Appellant now argues that such attack's were totally irrelevant. Even assuming that he was successful in establishing that Appellant had misidentified the "black jack tree" in the very early deed description, so what. How did that effect when she and her present husband moved on the property and began to clear it and use it and pay taxes on it and claim it as against all the world?

11

8. When Hearitage told Appellant that the deed that she was claiming under did not convey to her the property upon which she was living, what did she do? What would any reasonably prudent person do? Hopefully they would go to a competent lawyer, and ask how to fix the problem. She did. She went back to Steinhauser, and in effect, said, " what do I do now?' Steinhauser did what needed to be done. He prepared and had her sign an affidavit of possession and occupancy; counsel's argument that Valdez prepared, and filed, a false, fraudulent affidavit is simply not true. Steinhauser incorporated what the facts actually were, as he knew them, which were legally important to clearing the title; he did make a mistake with regard to the amount of the acreage that the tax office included in the tax rendition, but that was not the Appellant's fault, or even within her knowledge, and not a fatal error in any way. Clearly Juana Mendez Valdez, who speaks broken partial English, and does not read English well, and had no knowledge of the law, could not do any more than what her lawyer told her to do. He prepared a "corroborating affidavit" and told Appellant to get someone to sign it; was this fraud? Was the Appellant's actions in locating someone who knew her to sign the affidavit fraud? Not legally, but how would a lay juror know that? And then, how does that impact the burden of proof in this case? It should not have, but perhaps it did. The corroborating affidavit plays no significant legal impact on the issues in this case before the jury.

9. Counsel for Appellee spent a great deal of time in his brief arguing that Appellant Juana Valdez was guilty of fraud. First, there was no evidence of that; none of the elements of fraud, either statutory or common law, such as a material misrepresentation, which was relied upon by someone, were established by Appellee, and no jury issue was requested. But then even if there had been fraud on her part, fraud is not a defense to the claims of the Appellants in this case, because the nature of the acquisition of plaintiffs' possession is immaterial; the only issue is whether Plaintiffs have been in

12

possession for the requisite amount of time, depending on the statute relied upon.    See *Brohlin v. McMinn*, 341 S. W. 2d 420,  ( Tex. 1960)

"Naked possession of the premises claimed for the requisite period of time will secure title, no matter how tortious or wrongful may be the seizure";  Tex. Jur 3rd, Adverse Possession,  §112, citing *Brohlin,* supra and other cases.   Cf.  *Statham v. City of Tyler*,   257 S. w. 2d 742, 745 (Te. Civ. App. - Texarkana, 1953 n. r .e .)   A deed that is good on its face, and duly recorded, is sufficient to establish adverse possession under the five year statute even if procured by fraud. *Davis v. Howe*, 213 S. W. 609 (Commission of Appeals 1919).  As stated by Justice Sonfield in this opinion (at page 611), the title of the adverse possession claimant ripens into title, even based on a fraudulent deed, not because of the good faith of the claimant or the meritoriousness of his claim, but because of the acquiescence of the record title owner.

So Appellant says that all of counsel for Appellee's claims of fraud and misconduct on the part of Appellant are included in that brief only for the purpose of prejudicing this court into an error of law; again, it is just a red herring.


10.    Again, counsel for Appellee spent his entire time in trying this case in an attempt to discredit and impugn Appellant Juana Mendez Valdez's credibility, which he somewhat successfully did on immaterial and irrelevant issues.  and he did the same thing in his Appellee's Brief.  Admittedly, he raised some issues about whether she understood and responded in an appropriate fashion to his questions, but the bare facts remains; he did not establish that she had not satisfied the statute of limitations elements, which her total evidence as presented to the jury clearly established as a matter of law.


11.    Appellant bears the burden to establish that she has proven her case as a matter of law.  Appellant asserts that she has offered proof on each element of each of the various statute of limitations that meets that requirement.  The Appellee only has offered

13

a challenge to the Appellants proof by asserting issues of credibility as to non core based issues and which, even if non credible in some areas, do not effect or disestablish the basis elements of proof as required. In short, the jury answers were either the result of misinformation or prejudice, and should not stand, because Appellants have proven their case beyond a preponderance of evidence as a matter of law, and in fact even beyond reasonable doubt.

12. First at trial, and then now on appeal, Appellee has three options for defending herself. First, she could affirmatively prove that she had complied with the rule of law that required her to timely interrupt the Appellant's occupancy of the premises. Second, she could establish and prove that Appellant's burden of proof had not been substantively met, I. e. that her claim was not hostile, or open, for example. Or third, if she failed on the first two, she could attempt to assassinate Appellant and impeach her credibility so that her proof on essential elements might fail, at least with the jury. At trial, that apparently worked; Appellant can only hope that tactic is not persuasive to this court. This is what her counsel choose; substantively, Appellee did not have a defense, so her counsel choose to attempt to vilify and crucify Appellant; he called her a liar, a fraud, and a conspiracist with her lawyer at the time, Mike Steinhauser. By inference, he also then attempted to do the same to Mr. Steinhauser. Through out the trial, in final argument, and now throughout his Appellate Brief, his only real defense and tactic was to attach Mrs. Valdez on a personal level, As shown by the cases cited above, that is not enough.

Appellant asks the court to keep in mind that there were actually only two witnesses who testified, who had any knowledge regarding the essential elements necessary to establish title by adverse possession, namely Appellant and Appellee. And Appellee testified such that it was clear that she had no knowledge or ability to contradict any of the Appellant's testimony concerning these elements; Appellee's position was that

14

she did not know Appellant was there, which in itself is a self inflicted shot in the foot. So counsel for Appellee, by default really, had no defense except to attempt to establish that Appellant's testimony did not meet the legal requirement set out above, of being "clear, direct, positive, otherwise credible and free from contradiction and inconsistences and could have been readily controverted." Since Appellee could have readily controverted Appellant if she had facts with which to do so, because she said she did not know about Appellant, that aspect failed. Appellant's testimony was clear, it was direct, and it was positive, so Appellee's ability to disprove that aspect failed. So he had to fall back on the idea that her testimony, as an interested party, was not "Otherwise credible and free from contradiction and inconsistencies". But her testimony on the essential elements was credible and consistent. The "big" issue of whether the tree in her front yard was the "black jack tree" in the 100 year old property description was a red herring; clearly it was not, but counsel successfully confused and mislead Mrs. Valdez on this issue and now would make a big deal out of this; it was not a relevant inconsistency, and this was what the phrase "otherwise credible" has reference to.

For example, on page 2 of his Brief, he says that Appellant was "caught in multiple lies". He says that she lied because she said that Mrs. Gordon showed her the four corners, and that because Mr. Steinhauser said that no one could have determined the corners without a survey, that Mrs. Valdez lied. But he has no proof of that; Mrs. Gordon is dead, and so no one alive could establish that Mrs. Gordon did not tell Mrs. Valdez that. Mrs. Gordon had a "for sale" sign on the property, so obviously she did think that she owned it, and so why would she not tell a prospective buyer where the property was and where the boundaries and corners were? Who is to say, today, that Mrs. Gordon did not actually think that the property within the horse shoe, within the "four corners" was where the property was that she had acquired from Steinhauser. Actually, as shown by the plat, the property that Mrs. Valdez was claiming is essentially within the horseshoe that the streets make, and the four corners are defined by the street

15

corners, so why would Mrs. Valdez not believe that her property was within this area, and Mrs. Gordon could well have told her that; calling this a lie is simply a way to build an argument and it has no foundation, is deceptive on counsel's part, and it fails. His efforts to discredit and impeach Appellant on these insignificant, collateral issues, even if successful, do not go to the heart of the case, and clearly do not have any impact on Appellant's proof that she had in fact met the tests of adverse possession for the ten year and the five year statutes.

He argued that Mrs. Valdez "set about to take the property by false affidavit. . ". and that she "encouraged Mrs. Gordon to execute a deed without warranty ..". The facts are that Mr. Steinhauser did that; it is absolutely true that he did so in order to start the five year period of limitation; "that is what lawyer's do". There was nothing illegal, immoral, unethical or wrong about that course of conduct. See *Brohlin* supra and *Davis v. Howe*, supra.

Again, for example, his argument about her "lie" about paying the taxes on the 1.93 acre tract, when she in fact was only being taxed on the 0.493 acre tract, prior to 2006. The facts are clear that she paid the taxes that the Tax Appraisal District sent her notices about, and that she paid them on a timely basis. She did not "lie" about this matter. She was claiming what turned out to be a 1.93 acre tract, which she thought was what was described in the deed that Mr. Steinhauser had prepared for Mrs. Gordon to convey to her, and which at that time the Tax Appraisal District thought was only a 0.493 acre tract also. There were clearly some mistakes of knowledge, but there was no "lie" and particularly no intentional "lie" or misrepresentation.

Appellants now argue that, assuming arguendo that every one of the "lies" that counsel for Appellee claimed he established was in fact a "lie", that does not disprove any of the Appellant's proof of the essential elements of her case for adverse possession title.

16

13.     Appellee's argument that Appellant did not use the entirety of the tract from the outset, and thus did not use enough of it to satisfy the requirement that she had to use the entirety of the tract an entire ten year period is again an effort to make a silk purse out of a sow's ear.  He claimed that they did not use the lower part of the tract until they put the second mobile home on the property in 2005 (Brief, p. 2); that is not what the evidence is.  Appellant Valdez testified that her husband began to clear the property when they first acquired it, and over a period of time that they cleared the entirety of it.  Thus they were in fact using the entirety of the tract; the cases previously cited make it clear that the use of the property must be in accord with its susceptibility.  This football size field is not like a 160 acre tract that is used for pasture.

On page 16 and 17 of his Brief, Appellee's counsel cites the case of *Coleman v. Waddell*, 151 Tex. 337, 249 S. W. 2d 912 (Texas 1952); however, he does not cite the case correctly and refers to it for the wrong purpose.  He acknowledged that Appellant had cited *Doyle v. Ellis*, 549 S. W. 2d 62, (Tex. Civ. App. - Waco, 1977), no wr. hist), and he says that to the extent that *Doyle* conflicts with *Coleman*, that *Doyle* is not good law.  But he is wrong; there is no conflict.   The *Coleman*  case does not stand for what counsel says it does.  In *Coleman*, the claimant was only claiming a two acre tract out of a larger, 100 acre tract; the claimant did not seek to establish title to the 100 acre tract by his use of a part of the tract, and then, the salient part is that the Supreme Court held that claimant lost because there was no legal description offered to establish what and where the two acre garden tract was.  This decision is not on point with the issue in this case, is not in conflict with the *Doyle* decision, and Appellants did properly describe the tract that they were claiming and seeking to prove title to in this case.  Appellee's characterization of *Doyle* as not good law does not seem appropriate; it and its progeny have been cited subsequently on several occasions; see *De Alonso v. Soils*, 709 S. W. 2d 690, (Tex. App. -San Antonio, 1986, wr. ref. n. r. e) and *Dickson v. Dickson*, 993 S. W. 2d 735, 738 (Tex. App. - Houston [14th Dist.] 1999.

17

And again, Appellee's reference to *Harmon v. Overtone Refining Co.*, 130 Tex. 365, 109 S. W. 2 457 (1937) misses the point. Appellants are actually entirely in compliance with the rule announced in Harmon. The deed that Appellant initially got from Mrs. Gordon did not describe the property that Appellants were claiming, and thus they did establish that they were claiming the property described in their pleading by metes and bounds and that they had actually occupied the entirety of that tract for the requisite amount of time under each statute; their proof of use was in accordance with the rule that their use had to be in accordance with what the property was susceptible of being put to, which in this case was first, clearing, and thereafter, habitable occupancy. Appellants requested that the court properly instruct the jury as to the nature of the usage as well as the issue regarding the forcible entry suit, and submitted proper instructions therefor to the judge, who only submitted what he chose to do as shown in the Clerk's Record of the jury charge.

Appellee makes a point that the Appellant's mobile home was "partially" on the Seeberger tract. In actuality, according to the evidence from Mr. Hearitage, that depends on whether you use his plat, or that supplied by the State when it took the .008 acre tract for the Interstate highway, because it would have been entirely on the Seeberger tract by use of the state plat. But all of that is totally not relevant, because Mrs. Moerbe claimed that she did not know where it was under any circumstances, or by using either of those plats, and either before or after Hearitage did his work. If she is making the contention now that she did not know that the Appellants mobile home was on the Seeberger tract until 2009 because it was not entirely on the whole tract, that is entirely contrary to her previous testimony, and in fact, is just pretty lame.

Appellee makes an issue about there being no fencing put up by appellants. Fencing was not an issue nor an essential element of this case; Appellants were not seeking to separate their tract from another, larger one.

18

14.    With regard to the 5 year statute, Appellee says, on page 21, "Appellants do not contest the facts relating to the denial of their claim of adverse possession under the five (5) year rule".  Appellants do not know what that means;  Appellants clearly do, and strongly, contest the denial of that claim by the court and the jury.  Appellants spent a lot of time in their Appellants' Brief on that point.  Then Appellee goes on to say that the issue is whether the forcible entry filing stopped the five year time frame, and says "Clearly it does".  Appellants say that "Clearly it did not".  Again, we will not repeat all that was said in the original briefing, but all of the case law is opposite to Appellee's position.

On page 22, Appellee's argue that Appellants requested instruction would have amounted to an instructed verdict.  That is correct; Appellants were entitled to an instructed verdict, They requested one, and it was denied.  They requested judgment not withstanding, and it was denied.   Both rulings were wrong, and should be reversed

Appellee argues that Appellant did not offer any evidence regarding the status of the justice court case; it is true that Appellant did not offer any such evidence to the jury, because that was not a jury issue.  It was offered and was before the court, and it was a question of law that the judge had to rule on, and he ruled erroneously.  Appellee argued in his brief that Appellant only filed a general denial in the justice of the peace court, and did not plead title.   The justice of the peace ruled in favor of Mrs. Moerbe, and that judgment was appealed to the county court, where the issue of title and jurisdiction were raised, and so the issues were clearly before that court;  that court did not dismiss as it should have, but instead abated the case; therefore the language quoted by Appellee was partially inapplicable, because the case had not been abandoned, dismissed, or settled, but it had been "otherwise not prosecuted to a final judgment", and therefore for that reason alone it was not sufficient to interrupt the statutory period of time.

Starting on page 22 of their brief, through p. 28, Appellee argues that the

19

justice court case was sufficient to interrupt the statute and therefore the claim under the 5 year statute fails. Appellant has already briefed and described why this position is wrong, in the original Brief filed in this court, and in the various pleadings and briefs filed in the trial court and in the county court, which are set forth in the Clerk's Record and in the appendix to the Appellants Brief. They will not be repeated here. Suffice it to say that if Appellee were to be found to be correct in the ruling that he seeks, more than 150 years of Texas jurisprudence would be overruled and set on its head. The Justice Court has no jurisdiction to determine title, and a suit to determine title in that court is a non entity.

15.    Appellants did present to the Court requested instructions for the jury; those instructions are found in the Plaintiff's Requested Charge in the Supplemental Clerk's Record, p. 14 et seq. and are discussed at length in the Charge Conference in the Reporters Record, (RR. Vol 4, page 59 et seq.)  Once again, Appellee's argument in the brief is just not in accord with the facts and the record, and should be disregarded.

15.    One more time. The jury verdict was not in accordance with the evidence that was presented. It is obvious that the jury acted out of prejudice or some other reason outside of the record. Unfortunately, the trial court did not see fit to rectify that erroneous verdict, although given ample opportunity, so Appellant now asks this court to render the judgment that should have been rendered by the trial court.

WHEREFORE PREMISES CONSIDERED, Appellants pray that this  Court reverse the Judgment of the trial court, grant judgment to Appellants on the liability issues,  and remand this case to the trial court for trial of the issue as to the amount of Appellant's reasonable attorney fees for which they are entitled to recover, and for general relief at law and in equity.

20

Respectfully submitted,

Law Office of O. F. Jones III
109 W. Santa Rosa
P. O. Drawer E
Victoria, Texas 77902
(361) 573-6381
(361) 576-4507(fax)


By:___/s/ O. F. Jones III_____
    O. F. Jones III
    State Bar No. 10974000

    Attorney for Appellants


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellant's Reply Brief has been served on Appellee, by and through her Attorney of Record, Mr. Michael Trefny, Attorney at Law, P. O. Box 458, Columbus, Texas 78934 via First Class Mail on this 16th day of April, 2015.

    ___/s/ O. F. Jones III_____
        O. F. Jones III


### Certificate of Word Count

Pursuant to Rule 9.4 (l)(2)(B), Appellant certifies that the total word court of all of the contents of this Appellant's Reply Brief is 5.982 words.

    __/s/ O. F. Jones III_____
        O. F. Jones III